Daniel LESOEUR, et al.,
Plaintiffs–Appellants,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 92–16948.

United States Court of Appeals,
Ninth Circuit.

Submitted March 15, 1994 *.

Decided April 18, 1994.

* The panel unanimously finds this case suitable for submission on the record and briefs without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34–4.

Alan M. Kyman and John Friedeman, Phoenix, AZ, for plaintiffs-appellants.

Paul F. Figley, Heidi E. Weckwert, U.S. Dept. of Justice, Washington, DC, for defendant-appellee.

Before: CHOY, REINHARDT and LEAVY, Circuit Judges.

Opinion by Judge REINHARDT.

REINHARDT, Circuit Judge:

The Lesoeurs appeal the district court's dismissal of their tort action against the United States for lack of subject matter jurisdiction under the Federal Tort Claims Act ("FTCA"). The district court dismissed the action after finding that it was barred by the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a). Lesoeur first contends that the discretionary function exception does not apply because the National Park Service ("NPS") failed to comply with federal regulations. Lesoeur also contends that the NPS's negligent failure to warn is not protected by the discretionary function exception.

We affirm the district court's dismissal of the case. The regulation that was allegedly violated does not apply to the facts of the Lesoeurs' action. Additionally, the NPS's failure to warn is protected because political policy considerations were clearly implicated in the decision. Accordingly, the discretionary function exception applies and dismissal was proper.

## I.

In 1988, the Lesoeur family was vacationing in the United States. Their vacation included a trip to Grand Canyon National Park ("Park"), owned by the United States. To enter the Park and use its facilities, the Lesoeurs paid an admission fee to the United States.

While in the Park, the Lesoeurs decided to take a whitewater rafting trip on the Colorado River. The attendant at the tour information desk at the Bright Angel Lodge told the Lesoeurs that there were no openings. The attendant suggested that the Lesoeurs look for other tour companies in the yellow pages. After contacting several tour companies that had no space available, the Lesoeurs made a reservation with the Hualapai Indian Tribe ("Tribe") for a two-day rafting

tour operated by the Tribe. The tour began the next day.

On August 13, 1988, the Lesoeurs paid the Tribe for the tour and were bused with other tour members to the river's edge. There were no posted warning signs at or near the point where the group entered the water. Therefore, the Lesoeurs were not aware that the Tribe's tours were unregulated by the National Park Service ("NPS"). On the first day of the rafting trip, Mr. Lesoeur fell from the raft as it was abruptly turned in smooth water. He was severely injured when he was run over by the raft's propeller.

The Tribe's rafting tours had been totally unregulated by the NPS since a 12–month permit issued to the Tribe in 1973 had expired. Both parties agree that the NPS made a decision in 1976 not to regulate the Tribe's tours. This decision is reflected in the 1977 revision to 36 C.F.R. § 7.4.[1] It is also undisputed that the decision to exempt the Tribe's tours from regulation was linked to a boundary dispute between the Tribe and the United States.[2] The NPS maintains that it decided to refrain from asserting regulatory authority over the Tribe's tours due to the Tribe's claims of sovereignty.

Lesoeur filed thus action after the administrative claim he filed with the Grand Canyon National Park was denied. The United States filed a Motion to Dismiss for lack of subject matter jurisdiction on the ground that the action was barred by the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a). Lesoeur filed a Cross–Motion for Partial Summary Judgment. After a hearing, the district court granted the Motion to Dismiss, treating it as a motion for summary judgment.

## II.

■ The Federal Tort Claims Act, 28 U.S.C. § 1346 ("FTCA"), waives the sovereign immunity of the United States for certain torts committed by government employees where a claim would exist under state law if the government were a private person. However, this waiver of sovereign immunity is limited by the discretionary function exception, 28 U.S.C. § 2680(a), which provides that the waiver shall not apply to "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." Therefore, federal courts do not have subject matter jurisdiction over tort actions based on federal defendants' performance of discretionary functions. *See Garcia v. U.S.,* 826 F.2d 806, 809.

In *Kennewick Irrigation Dist. v. United States,* 880 F.2d 1018 (9th Cir.1989), the court followed a two-part inquiry to determine if the discretionary function exception applied:

> We must "first consider whether the action is a matter of choice for the acting employee.... [T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz* [*v. United States,* [486 U.S. 531, 534,] 108 S.Ct. 1954, 1958 [, 100 L.Ed.2d 531] (1988) ]. If the challenged conduct does involve an element of judgment, our second step is to "determine whether that judgment is of the kind that the discretionary function exception was intended to shield." *Id.* [at 536, 108 S.Ct.] at 1959. To be shielded, the judgment must be "grounded in social, economic, or political policy." *Id., quoting [United States v.] Varig [Airlines],* 467 U.S. [797, 814[, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660] (1984) ].

■ If the decisions are the type grounded in social, economic, or political policy judgments, the government is not required to "prove that it considered these

---

1. Section 7.4 was revised so that only rafting upstream from Diamond Creek was regulated. The Tribe's tours enter the river at Diamond Creek and operate solely downstream from this point.

2. The Tribe claimed it owned the southern half of the Colorado River along the northern boundary of the Tribe's Reservation. The United States claimed that it owned the entire river. Several other Indian tribes also were involved in the dispute. [SER 3–4, 9].

factors and made a conscious decision on the basis of them." *Kennewick,* 880 F.2d at 1028. The discretionary function exception reflects Congress's "wish[ ] to prevent judicial 'second-guessing' of legislative and administrative decisions ... through the medium of an action in tort." *Id.* at 1021–22 (quoting *Varig Airlines,* 467 U.S. at 814, 104 S.Ct. at 2764). The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on "the nature of the actions taken and on whether they are susceptible to policy analysis." *United States v. Gaubert,* 499 U.S. 315, 323–24, 111 S.Ct. 1267, 1274–75, 113 L.Ed.2d 335 (1991).

In this case, the Secretary of the Interior is granted discretion in promulgating regulations. The National Park Service ("NPS") enabling legislation states: "The Secretary of the Interior shall make and publish such rules and regulations as he may deem necessary or proper for the use and management of the parks ... under the jurisdiction of the National Park Service." 16 U.S.C. § 3. Additionally, 16 U.S.C. § 1a–2 states:

> "In order to facilitate the administration of the national park system, the Secretary of the Interior is authorized, *under such terms and conditions as he may deem advisable,* to carry out the following activities: ... (h) promulgate and enforce regulations concerning boating and other activities on or relating to waters located within areas of the National Park System...."

(emphasis added).

Using this statutory authority, the Secretary promulgates regulations to govern the operation of the national parks. The regulation that governs business operations within all of the national parks, 36 C.F.R. § 5.3, states that "[e]ngaging in or soliciting any business in park areas, except in accordance with the provisions of a permit, contract, or other written agreement with the United States, except as such may be specifically authorized under special regulations applicable to a park area, is prohibited." However, regulations in Part 7 of Chapter 36 are special regulations for specific park areas and "may amend, modify relax or make more stringent" the regulations in Parts 1 through

5 of the chapter. 36 C.F.R. § 1.2(c). Part 7 includes 36 C.F.R. § 7.4(b), the special regulation governing Colorado whitewater boat trips within Grand Canyon National Park. This regulation applies to "all persons using the waters of, or Federally owned land administered by the National Park Service, along the Colorado River within Grand Canyon National Park, *upstream from Diamond Creek at approximately river mile 226....*" 36 C.F.R. § 7.4(b).

Lesoeur alleges that the NPS failed to adequately supervise the Tribe with regard to the Tribe's whitewater rafting operations. He argues that the NPS failed to comply with 36 C.F.R. § 5.3, the general provision requiring all vendors in national parks to operate according to a written agreement with the NPS. As a result, Lesoeur asserts, the discretionary function exception does not apply under *Berkovitz.* In support of his claim, Lesoeur points to Law Enforcement Policy and Guideline NPS–9 ("NPS–9") which provides that "[t]he National Park Service will maintain law and order, protect persons and their property and protect park resources through the enforcement of all applicable laws and regulations." He argues that NPS–9 requires the NPS to prohibit the Tribe from engaging in business in the Park without a written agreement pursuant to 36 C.F.R. § 5.3.

■ This argument fails because § 5.3 does not apply to the Tribe's river tours: the regulation governing Colorado whitewater boat trips, 36 C.F.R. § 7.4(b), was amended to exempt the Tribe's river tours from NPS regulation. First, it is clear that the Secretary has a great deal of discretion in promulgating and enforcing regulations for use of the national parks under 16 U.S.C. § 3. More specifically, the Secretary has discretion in promulgating and enforcing regulations concerning boating under § 1a–2. Therefore, the Secretary has discretion to exempt the Tribe's tours from regulation.

■ The NPS asserted at trial that its decision not to regulate the Tribe's river tours was based on the underlying policy concerning the relationship between the United States and Indian tribes. The United

States has a made a clear policy decision to diminish regulation of Indian tribal activities. *See* Indian Self–Determination and Education Assistance Act, 25 U.S.C. § 450. Furthermore, the decision to exempt the Tribe from regulation was made in connection with a border dispute between the Tribe and the United States. The United States' policy of Indian self-determination and NPS's decision to settle the border dispute are precisely the types of political policy decisions that courts do not review. So, too, in this case, is the determination not to regulate the Tribe's use of the river.

Lesoeur argues that § 7.4(b) does not effectively exempt the Tribe's river tours from regulation because it is silent as to the Tribe and operations downstream from Diamond Creek. However, the NPS states that § 7.4(b) "governs all whitewater rafting operations on the Colorado River in Grand Canyon National Park" and specifies who must obtain permits for these operations. By excluding river operations originating at or below Diamond Creek, § 7.4(b) exempts river tours operated by the Hualapai from Park Service regulation as specifically as if section 7.4 had referred to the Hualapai by name, since the Hualapai whitewater boat trip operation is the only such operation in this category.

▮ In interpreting an administrative regulation, the administrative interpretation is given "controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). It is clear that the agency's interpretation of § 7.4(b) is not erroneous or inconsistent with the regulation. First, section 7.4(b) is titled "Colorado whitewater boat trips" and goes on to explain the regulations for such trips. Because this is the special regulation for Colorado whitewater boat trips within Grand Canyon National Park, it is not erroneous or inconsistent to interpret this as being the exclusive regulation for all such boat trips.

Section 7.4(b)'s legislative history supports this conclusion. In 1977, the NPS decided to exempt the Tribe's river tours from regulation after a border dispute developed between the Tribe and the United States. The NPS amended § 7.4(b) so that the regulations apply only upstream from Diamond Creek. This change exempted the Tribe from regulation because the Tribe's tours enter the river at Diamond Creek and only the Tribe's tours operate downstream from Diamond Creek. Additionally, access to the river at Diamond Creek is controlled by the Tribe. To take a river tour with the Tribe, one would have to leave the Park and enter the Tribe's Reservation. Also, one could enter the Tribe's Reservation without ever entering the Park. Although it may have been possible to amend the regulation more clearly, it cannot be said that it is erroneous or inconsistent to read the regulation as exempting the Tribe's river tours.

### III.

Lesoeur also alleges that the discretionary function exception does not apply to the NPS's failure to warn him that the Tribe's river tours were not regulated. Lesoeur first argues that the exception does not apply because, according to Lesoeur, the NPS did not make a decision that it would give no warnings, citing *Dube v. Pittsburgh Corning,* 870 F.2d 790 (1st Cir.1989). This argument fails because it is contrary to the law of this circuit.

In *In re Consolidated United States Atmospheric Testing Litig.,* 820 F.2d 982, 998–999 (9th Cir.1987), *cert. denied,* 485 U.S. 905, 108 S.Ct. 1076, 99 L.Ed.2d 235 (1988), we stated:

[Appellants] argue that the discretionary function exception cannot apply in the absence of a "conscious decision." The statute is not so limited.... The language is directed at the nature of the conduct, and does not require an analysis of the decision-making process.... If the decision to issue or not to issue a "warning" is within the discretionary function exception, then logically the failure to consider whether to issue one necessarily falls within the exception as well.

▮ Thus the question is whether a decision to warn or not to warn is within the discretionary function exception. In this case, a decision to warn or not to warn regarding the Tribe's river tours is subject to

the same policy concerns as a decision not to regulate the Tribe's tours in the first place. It is not difficult to see how relations between the Tribe and the United States could have been just as adversely affected by the NPS' warning Park visitors of the dangers of using the Tribe's tours as by its regulating of those tours. In fact, the warning might well have appeared to the Tribe to be even more hostile and intrusive.

■ Lesoeur also maintains that special consideration must be given to claims involving safety concerns or failure to give warnings. It is true, of course, that a failure to warn falls within the discretionary function exception only if it implicates political or economic policy considerations. In the usual case, the failure to warn involves only "safety considerations under an established policy, rather than the balancing of competing policy considerations." Thus, the discretionary function exception does not apply. *See Summers v. United States*, 905 F.2d 1212, 1215 (9th Cir.1990) (NPS's failure to warn about dangers of stepping on hot coals did not involve economic, social or political judgment, but was "a departure from the safety considerations established in [NPS] policies," and was therefore not protected by discretionary function exception.)

■ This, however, is not the usual case. The NPS's failure to warn that the Tribe's rafting tours were not regulated clearly implicated important political policy considerations. Unlike the failure to warn in *Summers*, such considerations would play an important role in any decision affecting the conduct of the Tribe's tours.[3]

## IV.

Accordingly, the district court's holding that the Lesoeurs' action was barred by the discretionary function exception to the Federal Tort Claims Act is

AFFIRMED.

---

3. *See also Richardson v. United States*, 943 F.2d 1107, 1111–12 (9th Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992) (NPS's failure to install ground wires on high-voltage power lines involved technical, economic and social considerations and was, therefore, protected by exception.).