**Everett Todd FABER, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 94–16096.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 11, 1995.

Decided June 6, 1995.

Gary S. Grynkewich, Linden, Chapa & Fields, Tucson, AZ, for the plaintiff-appellant.

Eugene R. Bracamonte, Asst. U.S. Atty., Tucson, AZ, for defendant-appellee.

Before: FLOYD R. GIBSON,\* HUG, and FERGUSON, Circuit Judges.

FERGUSON, Circuit Judge:

Everett Todd Faber sued the United States in tort for its failure to warn of the existence of diving hazards in a national park. The district court granted summary judgment in favor of the United States on the basis that the discretionary function exception to the Federal Tort Claims Act ("FTCA") rendered the court without subject matter jurisdiction to adjudicate Faber's claim. Faber appealed. We vacate the judgement of the district court and remand the case for consideration of Faber's tort claim.

*Background*

Faber's injury occurred at the Tanque Verde Falls ("the Falls"), located in the Coronado National Forest near Tucson, Arizona. On April 14, 1991, Faber dove approximately twenty feet from a rock ledge at the top of the Falls into a pool. During the dive, Faber struck his head and suffered severe injuries. Faber was rendered a quadriplegic. Because the Tanque Verde Falls are part of a national forest, they are managed by the United States Forest Service. At the time of Faber's accident, there were four warning signs located at the top of the Falls which warned generally of danger and natural hazards and specifically of flash flooding and slippery rocks.[1] The four signs had been in place since at least 1985.

Prior to Faber's accident in 1991, several "site management plans" were promulgated for the Falls. In May 1986, a "Site Management Plan for Tanque Verde Falls" was promulgated, which included graphs of the number, times, and nature of accidents occurring at the Falls. The graphs showed that seven percent of the accidents were diving accidents and that a large percentage of the victims were young adults. In June, 1986, a "Tanque Verde Falls Management Plan" was promulgated which stated that "[t]he need to re-evaluate the present management at Tanque Verde Falls has arisen due to accidents and the increase of resource damage." The management plan mandated the following action:

> Intensify the management for the area by constructing parking lots, trails, and helispots. Also, develop a sign plan, formulate an on-going media program to inform the public, and provide a presence at the Falls

---

\* Honorable Floyd R. Gibson, United States Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. These signs apparently had been erected pursuant to the "Tanque Verde Falls Sign Plan," promulgated in August 1985.

to verbally warn the public, enforce the laws, and record use patterns.

No new signs had been added to the upper Falls area between 1985 and 1991. At the time of Faber's accident, there were no written, verbal, or other warnings which specifically mentioned the hazards associated with diving from the Falls.

Faber filed this action against the United States in 1993. The United States moved for summary judgment on the ground that it was immune from suit under the FTCA's discretionary function exception. The district court granted summary judgment, holding that it lacked subject matter jurisdiction, because "[t]he decision involved a discretionary choice concerning whether to warn against specific dangers or to inform generally of features of the region" and "the Forest Service's discretionary decision involved social, economic, and political considerations." Faber now appeals.

### Discussion

■ Although the plaintiff bears the initial burden of proving subject matter jurisdiction under the FTCA, "the United States bears the ultimate burden of proving the applicability of the discretionary function exception." *Prescott v. United States*, 973 F.2d 696, 701–02 (9th Cir.1992). We review *de novo* both the district court's grant of summary judgment as well as its determination of subject matter jurisdiction. *Jesinger v. Nevada Federal Credit Union*, 24 F.3d 1127, 1130 (9th Cir.1994) (summary judgment); *Nike, Inc. v. Comercial Iberica De Exclusivas Deportivas*, 20 F.3d 987, 990 (9th Cir. 1994) (subject matter jurisdiction).

### I.

■ The Federal Tort Claims Act waives the federal government's sovereign immunity when its employees are negligent within the scope of their employment. One of the main purposes of the FTCA is to establish consistency between the liability incurred by individuals and by the government for the commission of tortious acts. Hence, the government can be sued "under circumstances where the United States, if a private person, would be liable to the claimant in accordance

with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

■ Consistent with this purpose, the FTCA is limited by a number of exceptions including the discretionary function exception, which bars a claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The discretionary function exception restores the government's immunity in situations where its employees are carrying out governmental or "regulatory" duties. *See* 138 Cong.Rec. S13982–01, *S14010 (daily ed. Sept. 18, 1992). Accordingly, if the government can prove that the actions taken by its employees consisted of the unique functions and responsibilities of the government, then the government cannot be held liable under the FTCA even if a private individual would be held liable. *See* H.R.Rep. No. 1015, 101st Cong.2nd Sess. 134 (1991) ("The purpose of the discretionary function exception is to protect the ability of the government to proceed with decisionmaking in carrying out its unique and vital functions without 'second-guessing' by the courts as to the appropriateness of its policy choices"); *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814, 104 S.Ct. 2755, 2764–65, 81 L.Ed.2d 660 (1984). However, in cases where the government is alleged to have committed negligence in the performance of a function such as that performed by a private citizen, rather than in the fulfillment of a broad policy-making duty, the government is subject to suit.

It is clear that the question of what constitutes adequate warning is not typically related to broad public policy. To the contrary, the typical case in which the government is sued for a failure to warn is like *Summers v. United States*, 905 F.2d 1212 (9th Cir.1990), where the government was not shielded from liability for the Forest Service's failure to provide adequate warnings about fire rings on a beach in a national park. The Forest Service's conduct was not related to a matter

of broad public policy. *Id.* at 1215. Rather, the conduct was the same as that of a private citizen who fails to take proper action to ensure the safety of visitors on its property and is thereby liable for negligence.[2] *See ARA Leisure Services v. United States,* 831 F.2d 193, 195 (9th Cir.1987) (quoting *Aslakson v. United States,* 790 F.2d 688, 693 (8th Cir.1986)) ("where the challenged governmental activity involves safety considerations under an established policy, rather than the balancing of competing policy considerations, the rationale for the exception falls away and the U.S. will be responsible for the negligence of its employees"); *Sutton v. Earles,* 26 F.3d 903, 910 (9th Cir.1994) (the Navy's failure to post a speed limit sign in contravention of a federal regulation "was more than a failure to enforce a general system of regulation; it can reasonably be regarded as a failure to warn").

■ Thus, a failure to warn involves considerations of safety, not public policy. It would be wrong to apply the discretionary function exception in a case where a low-level government employee made a judgment not to post a warning sign, or to erect a guardrail, or to make a safer path. Such a judgment would be no different than a judgment made by a private individual not to take certain measures to ensure the safety of visitors. To interpret such a judgment as discretionary would be too expansive an interpretation of Congress' intent in creating the discretionary function exception. Therefore, in cases where the government has allegedly failed to warn, the use of the discretionary function exception must be limited to those unusual situations where the government was required to engage in broad, policy-making activities or to consider unique social, economic, and political circumstances in the course of making judgments related to safety. *See Lesoeur v. United States,* 21 F.3d 965, 970 (9th Cir.1994) (where the court applied the discretionary function exception because of the unusual circumstances involved in the government's failure to warn).

This case involves the question of whether the Forest Service was negligent in ensuring the safety of the public in an area under the Forest Service's control. The actions that the Forest Service was required to take in the course of implementing proper warnings at the Falls were not broad policy-based decisions that warranted protection pursuant to the discretionary function exception. No unusual circumstances existed which required the Forest Service to engage in policy-making or discretionary activities. Therefore, we reject the government's attempt to escape liability under the discretionary function exception.

■ In order to determine the applicability of the discretionary function exception in a given case, this court applies the two-part test established in *Berkovitz v. United States,* 486 U.S. 531, 535, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988). *See Kennewick Irrigation District v. United States,* 880 F.2d 1018, 1025 (9th Cir.1989). First, we must consider whether the action taken is a matter of choice or judgment for the acting employees. "[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive." *Berkovitz,* 486 U.S. at 535, 108 S.Ct. at 1958. If the challenged conduct does involve an element of judgment, we must next consider whether the judgment is "grounded in social, economic, and political policy." *Id.* Thus, the discretionary function exception protects only broad policy-based actions or decisions by government employees.

## II.

■ Faber contends that the government failed to meet the first part of the *Berkovitz* test, because the Forest Service did not exercise any choice in failing to warn about the dangers associated with diving from the

**2.** *See, e.g., Delozier v. Evans,* 158 Ariz. 490, 493, 763 P.2d 986, 989 (App.1988) ("There is sufficient evidence ... to support a finding that [tavern] employee was negligent in failing to take steps to protect or warn patrons [regarding alter-cations in tavern]"); *Sanders v. Brown,* 73 Ariz. 116, 119-20, 238 P.2d 941, 944-45 (1951) (owner of property owes a social guest a duty to warn of or protect against concealed dangers).

Falls. He is correct. The Forest Service failed to follow specifically prescribed policies which required the implementation of safety measures to warn of the specific and known safety hazard at issue.

16 U.S.C. § 1 and the regulations promulgated thereunder control the use and preservation of national parks. In addition to these statutes and regulations, the Forest Service was required to follow safety programs promulgated specifically to regulate the use of the Tanque Verde Falls. *See Summers*, 905 F.2d at 1214 (under the first part of the *Berkovitz* test, the discretionary function exception would not have applied if the Park Service had failed to follow the park's own "Safety and Environmental Health Management Program"). Hence, these park-specific programs were among the federal "statute[s], regulation[s], [and] polic[ies]" that limited the Forest Service's discretion in managing the Falls. *Berkovitz*, 486 U.S. at 535, 108 S.Ct. at 1958.

It is undisputed that by May 1986, the Forest Service knew that a significant number of diving accidents were regularly occurring at the Falls.[3] In June 1986, a *Tanque Verde Falls Management Plan* was promulgated in order to respond to the increase of accidents. The June 1986 plan required the Forest Service to "intensify management" at the Falls by 1) developing a sign plan, 2) formulating an on-going media program, and 3) providing a presence at the Falls to verbally warn the public.

Despite its knowledge of the specific safety hazards associated with diving at the Falls, and despite the unambiguous safety program established in response to these hazards, the Forest Service failed to provide any warnings not to dive from the Falls. It is undisputed that from 1985 through the time of Faber's accident in 1991, the Forest Service failed to put up any new signs to warn of specific hazards. The only signs that were in place at the time of Faber's accident were the signs that were already in place *before* the promulgation of the June 1986 site manage-

ment plan that mandated the development of more specific signs and other methods of warning. Thus in 1991, there were no signs at the Falls to warn of the hazards associated with diving. In addition, at the time of Faber's accident, the Forest Service had completely failed to implement a "media program" or to "provide a presence at the Falls to verbally warn the public."

The Forest Service had no choice but to follow the June 1986 site management plan. *Summers*, 905 F.2d at 1214. The plan did not give the Forest Service the option to do nothing in response to the new hazards enumerated in the May 1986 site management plan. To the contrary, the June 1986 plan listed three specific and mandatory measures that the Forest Service was to take in order to increase safety at the Falls. The Forest Service failed to implement all three of the requirements enumerated in the June 1986 plan. Because the challenged conduct of the Forest Service was in direct contravention of a specifically prescribed federal policy, the discretionary function exception does not apply. *See Arizona Maintenance Co. v. United States*, 864 F.2d 1497, 1504 (9th Cir.1989) ("If it is a choice to be exercised within established objective safety standards, and the plaintiffs claim negligence in failure to follow such standards, the discretionary function exception does not apply"); *Seyler v. United States*, 832 F.2d 120, 123 (9th Cir.1987) ("we doubt that any decision not to provide adequate signs would be 'of the nature and quality that Congress intended to shield from tort liability' ") (quoting *Varig Airlines*, 467 U.S. at 813, 104 S.Ct. at 2764). The government failed to meet the first part of the *Berkovitz* test.

### III.

The government contends that its failure to post signs warning of diving hazards, and to implement the other mandates of the June 1986 plan, involved an exercise of its judgment. Specifically, the government claims that in choosing how to implement the plan,

---

**3.** In May 1986, a *Site Management Plan for Tanque Verde Falls* was promulgated showing that seven percent of the accidents at the Falls were diving accidents. The district court recognized in its order that as of January 1993, out of 67 accidents occurring at the Falls, nine percent were diving accidents.

the Forest Service was required to balance competing economic, social, and political considerations concerning visitor safety and resource damage. Therefore, the government claims that it meets both parts of the *Berkovitz* test.

In *Sutton*, 26 F.3d at 910, we stated that a "decision not to warn of a specific, known hazard for which the acting agency is responsible is not the kind of broader social, economic or political policy decision that the discretionary function exception is intended to protect." Any choice that the Forest Service had available to it had to be made within the parameters of the June 1986 plan. Even if the Forest Service had met the first part of the *Berkovitz* test to the extent that it complied with the specific measures enumerated in the June 1986 plan, the plan did not give the Forest Service the discretion to balance competing considerations in the course of carrying out its mandate. The June 1986 plan focused on solving specific known safety hazards through the implementation of three unambiguous directives. By contrast, in *Childers v. United States*, 40 F.3d 973, 974 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1821, 131 L.Ed.2d 744 (1995), where the government was sued for injury to a child skiing on an unmaintained trail in a national park, the Forest Service was guided only by general operating procedures which required the Forest Service to "weigh public access against visitor safety."[4] The Forest Service in *Childers* was not given specific measures to be implemented, but rather was given full discretion as to how to "adequately warn" visitors of unknown dangers on hundreds of unmaintained trails spanning a vast portion of a wintry national park. No such discretionary or high-level decisions were required by the June 1986 plan.

Finally, our decision in this case is in accordance with past cases in this circuit, which have only applied the discretionary function exception in failure to warn cases where a unique circumstance has required the governmental employees to make a policy-based judgment that is usually not necessary to the implementation of a safety program. In *Lesoeur*, 21 F.3d at 970, for example, the court applied the discretionary function exception to a decision not to warn about the lack of regulation of rafting tours in a national park. The court recognized that this was not the "usual" failure to warn case because the tours were operated by the Hualapai Indian Tribe and the decision not to regulate the tribe involved broad policy-based considerations:

> It is not difficult to see how relations between the Tribe and the United States could have been just as adversely affected by the [Park Service's] warning Park visitors of the dangers of using the Tribe's tours as by its regulating of those tours. In fact, the warning might well have appeared to the Tribe to be even more hostile and intrusive.

*Id. See also In re Consolidated Atmospheric Testing*, 820 F.2d 982, 990 (9th Cir.1987), *cert. denied*, 485 U.S. 905, 108 S.Ct. 1076, 99 L.Ed.2d 235 (1988) (the court applied the discretionary function exception, because the "decision whether to issue warnings to thousands of test participants of possibly life-threatening dangers [associated with nuclear radiation during the bombing of Hiroshima] ... calls for the exercise of judgment and discretion at high levels of government").

In contrast to these cases, the Forest Service was not required to take account of any unique policy-based circumstances in carrying out the mandate of the June 1986 plan.

---

**4.** This court recently decided *Valdez v. United States*, 56 F.3d 1177 (9th Cir.1995), in favor of the government in a case also concerning the application of the discretionary function exception to the Federal Tort Claims Act. In *Valdez*, the plaintiff had climbed up the side of a waterfall, crossed the creek and was descending down the other side when he fell into the waterfall. The area was not a part of any designated trail and there had been no evidence of any prior accidents of this sort. *Valdez* is distinguishable from the case at hand because, as in *Childers*, the

Forest Service was required to balance conflicting considerations involving social, economic, and political policies in determining whether or not to provide specific warnings about possible hazards in areas of the park left in its natural state, including the possible danger in climbing and descending a waterfall. Moreover, in *Valdez* the injury did not, as in this case, result from a known danger where there had been numerous accidents. Rather, the waterfall was one of countless conceivable, yet unknown, hazards existing in a park left in its natural state.

Nothing in Faber's claim distinguishes it from a tort claim against a private individual who has failed to warn adequately of dangers on its property. The government has failed to prove the applicability of the discretionary function exception. The government is not immune from liability in tort. Therefore, the district court has subject matter jurisdiction to adjudicate Faber's tort claim.

## Conclusion

The judgment of the district court is VACATED and the case is REMANDED for consideration of Faber's tort claim.