**Daniel REED, Plaintiff,**

v.

**AVIS RENT–A–CAR, et al., Defendants.**

**Civil No. 97–20760 SW.**

United States District Court,
N.D. California.

Dec. 10, 1998.

Michael M. Shea, Michael M. Shea, Jr., Beth C. Watkins, Shea & Shea, San Jose, CA, for Plaintiff.

Michael E. Sullivan, Thorndal Armstrong Delk Balkenbush & Eisinger, Reno, NV, Gregory R. Shannon, Washoe County Dist. Attorney's Office, Reno, NV, James P. Castles, Gordon & Rees, San Francisco, CA, Yonkel Goldstein, U.S. Attorney's Office, San Jose, CA, for Defendants.

### ORDER GRANTING DEFENDANT UNITED STATES' MOTION FOR SUMMARY JUDGMENT

SPENCER WILLIAMS, District Judge.

Plaintiff Daniel Reed ("Reed") brought this action against a number of defendants alleging that their negligence resulted in injuries he suffered when a car ran over the tent in which he was sleeping. Among the defendants Reed named in the complaint is the United States Department of the Interior, Bureau of Land Management (the "BLM"),[1] sued under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* ("FTCA"). The United States now moves for summary judgment on the grounds that the Court lacks subject matter jurisdiction over the action under the discretionary function exception ("DFE") to the FTCA, 28 U.S.C. § 2680(a). For the reasons set forth below, the Court GRANTS the United States' motion.

---

1. The proper federal defendant in this tort action is the United States, which should be substituted for the Bureau of Land Management pursuant to 28 U.S.C. § 2679.

## I. BACKGROUND

Each year from 1992 to 1996, organizers of an event known as Burning Man applied for and received a special recreation permit from the BLM. The permit allowed Burning Man organizers and participants to enter and use certain federally-owned land for their performance arts festival. The event usually lasted several days. In 1996, the five-day Burning Man event was held in the Black Rock desert playa of Nevada, an extremely remote area which consists of little more than vast stretches of sun-hardened silt.

Reed attended the 1996 Burning Man festival where he slept in a tent. During the early hours of September 2, 1996, Larry Dean Hudson drove over Reed while he slept, causing Reed severe injuries. Reed alleges that Hudson was under the influence of drugs and/or alcohol at the time of the accident.

According to Reed, the BLM was negligent when it issued a permit to the organizers of the Burning Man event. Reed further alleges that the BLM was negligent when it later failed to enforce or suspend the permit, failed to warn campers of the danger posed by reckless drivers, and failed to enforce applicable local, state, and federal laws, all of which he asserts would have prevented the type of behavior that caused his injuries.

The United States claims that all actions of BLM employees alleged by Reed to be negligent fall within the discretionary function exception to the FTCA. Therefore, according to the United States, this Court lacks subject matter jurisdiction over the claims against the federal defendant.

## II. LEGAL STANDARD

An action can be brought by a party against the United States only to the extent that the Federal Government waives its sovereign immunity. *See Blackburn v. United States*, 100 F.3d 1426, 1429 (9th Cir. 1996). The FTCA waives the Government's sovereign immunity for tort claims arising out of the negligent conduct of government employees acting within the scope of their employment. *See id.* Thus, the Government can be sued "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the

law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

The FTCA's waiver of immunity is limited, however, by the discretionary function exception, which bars claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exception "restores the government's immunity in situations where its employees are carrying out governmental or 'regulatory' duties." *Faber v. United States*, 56 F.3d 1122, 1124 (9th Cir.1995) (citations omitted). Although application of the exception may be troubling when it acts as a shield for carelessness and poor judgment, "[t]he sovereign has, by the exercise of its authority, reserved to itself the right to act without liability for misjudgment and carelessness in the formulation of policy." *National Union Fire Ins. v. United States*, 115 F.3d 1415, 1422 (9th Cir.1997).

To determine whether challenged conduct falls within the discretionary function exception, the court must employ a two-step analysis. First, the court must determine "whether the challenged actions involve 'an element of judgment or choice.'" *Valdez v. United States*, 56 F.3d 1177, 1179 (9th Cir.1995) (quoting *United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)). "This requirement of judgment or choice is not satisfied if a federal statute, regulation, or policy requires a particular course of action." *Gager v. United States*, 149 F.3d 918, 919 (9th Cir.1998) (citing *Gaubert*, 499 U.S. at 322, 111 S.Ct. 1267; *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). If a particular course of action is required, the inquiry is at an end and the discretionary function exception does not apply because "the employee has no rightful option but to adhere to the directive." *Id.*

However, if an element of choice or judgment is involved, the court must move on to the second step of the analysis and determine "whether that judgment is of the kind that the discretionary function excep-

tion was designed to shield." *Gaubert,* 499 U.S. at 322–23, 111 S.Ct. 1267. The exception "protects only governmental actions and decisions based on considerations of public policy." *Id.* at 323, 111 S.Ct. 1267. In other words, decisions "grounded in social, economic, and political policy" will be protected by the discretionary function exception. *Childers v. United States,* 40 F.3d 973, 974 (9th Cir.1994). Throughout the Court's analysis, "the United States bears the ultimate burden of proving the applicability of the discretionary function exception." *Faber,* 56 F.3d at 1124 (quoting *Prescott v. United States,* 973 F.2d 696, 701–02 (9th Cir.1992)).

## III. DISCUSSION

Reed argues that the following BLM actions do not fall within the discretionary function exception: (1) issuing the permit; (2) not enforcing or suspending the permit during the event; (3) failing to warn campers of the danger posed by reckless drivers during the event; and (4) failing to enforce applicable local, state and federal laws during the event. As explained below, the Court concludes that each action of the BLM involved an element of judgment or choice, and that the judgment or choice is of the kind that the discretionary function exception was designed to shield. Accordingly, the Court lacks subject matter jurisdiction over Reed's claims against the United States.

### A. Permit Issuance

The United States argues that the BLM's act of issuing the 1996 permit falls within the discretionary function exception. Reed argues that the BLM knew of problems encountered at the 1995 event which should have either resulted in more stringent conditions on the 1996 permit or precluded its issuance entirely. In support of his argument, Reed provides an extensive list of incidents which occurred during the 1995 Burning Man which he claims should have alerted the BLM to the potential problems associated with issuing a permit in 1996. In addition, Reed submitted evidence that various organizations filed with the BLM written objections opposing the issuance of the 1996 permit.

▮ Significantly, Reed's evidence and argument focus on the BLM's alleged negligence. However, "negligence is simply irrelevant to the discretionary function inquiry." *Kennewick Irrigation District v. United States,* 880 F.2d 1018, 1029 (9th Cir.1989). For the most part, Reed fails to address the questions of whether the BLM had discretion to issue the permit and, if so, whether its decision involved questions of public policy. Those are the only relevant questions for purposes of this motion.

The BLM had discretion to issue the permit. Consistent with "principles of multiple use and sustained yield," Congress authorized the Secretary of the Interior to issue regulations providing for the use of public lands. 43 U.S.C. § 1732(a); *see also* 43 U.S.C. §§ 1733 and 1740. Regulations promulgated pursuant to this delegation of authority provide that "[t]he approval of an application and subsequent issuance of a special recreation permit is discretionary with the authorized officer." 43 C.F.R. § 8372.3. Furthermore, "[a] special recreation permit will contain such stipulations as the authorized officer considers necessary to protect the lands and resources involved and the public interest in general." 43 C.F.R. § 8372.5(b).

These regulations clearly indicate that the decision to issue a special recreation permit—and what stipulations to attach to that permit—are discretionary with the BLM, and that the BLM's decision is based on considerations of public policy. Issuance of a permit involves a balancing of the principles of providing recreation, utilizing resources, protecting the environment, and safeguarding the public interest in general. The BLM's decision to issue a permit to the organizers of Burning Man 1996, and its decision regarding what conditions to attach to that permit, fall within the discretionary function exception to the FTCA. Reed's claim regarding the BLM's negligence in issuing a special recreation permit is therefore barred.

### B. Enforcing/Suspending the Permit

Reed next argues that the BLM's failure to enforce or suspend the permit during the 1996 Burning Man event falls outside the discretionary function exception. As a prelude to this argument, Reed contends that

the BLM had a duty to monitor the event. Once the BLM discovered that the behavior of Burning Man participants had resulted in a dangerous situation, Reed argues that it was negligent when it did not suspend the permit or enforce the conditions and stipulations of the permit.

The BLM Manual dated September 9, 1987 (the "Manual") states that "[p]ermits are monitored for compliance with stipulations, terms and conditions." BLM Manual at VII–1. The amount of monitoring, however, is left to the BLM's discretion, and should be "commensurate with the resource values at risk, the permittee's past record of compliance, the ability to obtain monitoring services through other means . . . and other factors." *Id.*

■ The parties agree that the BLM had officers present for the purpose of monitoring the 1996 Burning Man event. The decision regarding how much to monitor the event was expressly left to the judgment of the BLM, upon consideration of public policy. That decision is therefore protected by the discretionary function exception.

■ The next step in Reed's argument is that the Manual imposed a mandatory duty on the BLM to suspend the permit at the event for any violation of a law, regulation or permit stipulation. The Manual states that "[p]ermits shall be immediately suspended, and other appropriate penalties imposed, for violations of Federal, State, or local laws, regulations, or permit stipulations providing for the safety or health of the public." BLM Manual at VII–2. Reed has failed to submit any evidence that Burning Man organizers violated any law or regulation. The only stipulation which Reed contends the organizers violated was one which imposed on Burning Man organizers responsibility "for all acts of safety associated with the event." The BLM's determination concerning whether Burning Man organizers acted responsibly is discretionary and would qualify for protection under the discretionary function exception. However, it not necessary to address that issue because the Manual's requirement that the BLM suspend a permit for a viola-

tion of a law, regulation or permit stipulation is nothing more than agency policy. "Policies are the result of discretionary decisions and are established to guide the agency's employees; a declaration of policy does not create a legally enforceable duty." *Concrete Tie of San Diego, Inc. v. Liberty Construction, Inc.,* 107 F.3d 1368, 1372 (9th Cir.1997). Therefore, the BLM is not under a mandatory obligation to suspend a permit if a stipulation is violated.

Furthermore, the idea that the BLM had a duty to suspend the permit if a law or stipulation was violated contradicts the applicable regulation and common sense. The applicable regulation provides that the "authorized officer *may* suspend a special recreation permit if necessary to protect public health, public safety, or the environment." 43 C.F.R. § 8372.5(a)(1) (emphasis added).[2] This language is permissive, bestowing discretion rather than imposing a mandatory duty. Furthermore, common sense requires that the decision be discretionary. Any interpretation of policy that required the BLM to suspend a permit when any participant broke any law might result in greater danger to public safety. This might occur, for instance, if a permit were suspended in the middle of the night or during adverse weather conditions because a participant failed to come to a complete stop at a traffic signal. Mandatory suspension of the permit and the subsequent evacuation of participants could prove more dangerous to health and safety than allowing the event to proceed. Such an absurd outcome is avoided because the BLM retains discretion regarding permit suspension. The factors to be considered—health, safety, and the environment—clearly involve public policy. Therefore, the BLM's decision not to suspend the permit is protected by the discretionary function exception.

As a final element of his argument, Reed asserts that the BLM was negligent when it did not enforce the conditions and stipulations of the permit. Specifically, Reed argues that the BLM "failed to take any steps to ensure that Burning Man complied with

---

**2.** In its argument, the United States cited 43 C.F.R. § 2920.9–3. The more relevant regulation, however, is that cited by the Court, directly concerning special recreation permits of the type involved in this case.

the conditions and stipulations of the permit providing for safety." Reed has submitted no evidence, however, that the BLM was under a mandatory duty to enforce the conditions and stipulations of the permit. The only duty to which Reed refers in this context is one concerning a performance evaluation. The BLM Manual imposes on the BLM an obligation to conduct, at a minimum, an annual performance evaluation. The Manual describes the purpose of such an evaluation as follows:

> The purpose of a performance evaluation is to: evaluate a permittee's performance and compliance with the terms and conditions of the permit; determine if use complies with management plan objectives; review past year receipts to determine overpayment or underpayment; use the evaluation as a criterion in issuing a new permit or renewing an existing permit; or other purposes as defined by the authorized officer.

BLM Manual at VII–1. The Manual states that standards used to evaluate performance "are developed by the authorized officer in consultation with the permittee(s), and others as appropriate." *Id.* In developing an evaluation, important considerations include "the degree of compliance with conditions of the permit and operating plans, the protection of resource values, and quality of services rendered to the public." *Id.*

 Thus, the BLM is under a duty to conduct an annual performance evaluation. This evaluation, however, does not require enforcement of permit conditions or stipulations during an event. An evaluation whose purpose is to determine compliance with conditions and stipulations does not impose an additional requirement that the evaluator enforce the conditions and stipulations during an event. Even if this were the case, the standards used in an evaluation are left to the discretion of the BLM, in accordance with considerations of public policy. Even though Reed may disagree with the BLM's decision in this case, the discretionary function exception is designed to protect such decisions from "judicial second-guessing." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense,* 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984) (in enacting the statute containing the discretionary func-

tion exception, "Congress wished to prevent judicial 'second guessing' ").

## C. Failure to Warn Campers

Reed next argues that the BLM had a mandatory duty to warn campers of the danger posed by reckless drivers. According to Reed, the BLM's status as a landowner who permitted others to use its land imposed a common law duty to assure that the activities conducted on the land are not conducted negligently. Reed's argument is without merit.

 A generally accepted rule of common law is that the lessor of land (no matter how long or short the period) is not subject to liability to his lessee, or others upon the land with the consent of the lessee, for physical harm caused by any dangerous condition which comes into existence after the lessee has taken possession, with certain defined exceptions. *See Restatement (Second) of Torts* § 355. The recognized exceptions may be summarized as follows:

1. When the lessor contracts to repair the premises and fails to do so;
2. When there were undisclosed dangerous conditions known to the lessor and unknown to the lessee;
3. When lessor knows the lessee will admit the public and knows or has reason to know of a dangerous condition on the land existing when the lessee takes possession;
4. When parts of the land are retained in the lessor's control, which lessee is entitled to use, or will use by necessity; and
5. When the lessor undertakes to repair the premises and does so negligently.

*Restatement (Second) of Torts* §§ 357–362.

 In this case, the BLM charged the Burning Man organizers a per-person daily fee for use of the land. Having received payment for the use of the land, the BLM is a lessor, and the organizers of Burning Man 1996 are lessees, of the land. As none of the five exceptions described above alters the common law rule limiting liability, a landowner would not be found liable for failure to warn under the circumstances of this case. Because the federal government can only be sued "under circumstances where [it], if a

private person, would be liable," 28 U.S.C. § 1346(b), it cannot be found liable either. Reed's claim regarding the BLM's duty to warn campers must fail.

■ Furthermore, the BLM has the discretion to include in a permit "such stipulations as the authorized officer considers necessary to protect the lands and resources involved and the public interest in general." 43 C.F.R. § 8372.5(b). In the stipulations attached to the 1996 Burning Man permit, the organizers agreed "to assume responsibility for public safety and health during any phase of the event, including, but not limited to the following: . . . all acts of safety associated with the event." The decision to delegate responsibility for safety to the permittee of an event such as Burning Man implicates the BLM's authority to issue a permit and falls within the discretionary function exception, as discussed, *supra*, at III.A.

### D. Failure to Enforce Laws

Finally, Reed argues that the BLM had a duty to enforce all applicable federal, state and local laws at the Burning Man event. He argues that this was a mandatory duty, and that the BLM's negligent failure to enforce the law does not fall within the discretionary function exception to the FTCA. Reed's argument is without merit.

■ The enforcement of law is a uniquely governmental function, and "[w]hen the United States is sued for torts committed in the course of 'uniquely governmental functions,' this circuit allows recovery only when a state or local government would be liable under like circumstances." *Cameron v. Janssen Bros. Nurseries, Ltd.*, 7 F.3d 821, 825 (9th Cir.1993).

■ In Nevada, where Burning Man 1996 took place, a "law enforcement agency is not liable for the negligent acts or omissions of its . . . officers" unless (1) the officers "made a specific promise or representation to a natural person who relied upon the promise or representation to his detriment" or (2) the officers' conduct "affirmatively caused the harm." Nev.Rev.Stat. § 41.0336.[3] As neither of these exceptions is applicable here, a state or local government would not

be liable for the negligence of its officers. Accordingly, the United States cannot be liable for the BLM's alleged negligent enforcement of any federal, state, or local law.

### E. Reed's Motion to Strike Citations to Unpublished Dispositions

■ In support of its motion for summary judgment, the United States cited several unpublished dispositions from the Ninth Circuit. These opinions, although readily available from electronic databases, explicitly state that they are not for publication and that pursuant to Ninth Circuit Rule 36–3 they are not to be used as precedent and should not be cited. Reed objects to these citations and moves to strike them.

Ninth Circuit Rule 36–3 states:

Any disposition that is not an opinion or an order designated for publication under Circuit Rule 36–5 shall not be regarded as precedent and shall not be cited to or by this Court or any district court of the Ninth Circuit, either in briefs, oral argument, opinions, memoranda, or orders, except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.

Ninth Circuit Rule 36–3. The Rule makes clear that any citation to unpublished dispositions is improper. The United States' argument regarding the propriety of citing unpublished dispositions merely as persuasive authority is without merit. Accordingly, the Court GRANTS Reed's motion to strike and hereby STRIKES all citations to unpublished dispositions.

### F. Evidentiary Objections

In connection with the present motion for summary judgment, Reed and the United States each filed evidentiary objections. The parties' objections are addressed in turn.

#### 1. Reed's Evidentiary Objections

On October 28, 1998, Reed objected to the Declaration of Ron Wenker, the current District Manager of the Medford, Oregon District office of the BLM. On November 16, 1998, Reed objected to the Declaration of Bud Cribley, Assistant District Manager for

---

**3.** Similarly, California law provides that "a public entity is not liable for an injury caused . . . by failing to enforce any law." Cal. Gov't Code § 818.2.

Nonrenewable Resources for the Winnemucca District of the BLM at all relevant times, and to the Further Declaration of Ron Wenker. Reed's objections include: (1) the declarations contain statements which are not based upon personal knowledge; (2) the declarants rely upon reports and records which are unidentified, not authenticated, and not attached to the declarations for further review; (3) the declarants render opinions which they are not competent to render; and (4) the declarations contain statements that are hearsay.

The Court has not relied on any portion of the evidence submitted by the United States to which Reed objected. Therefore, Reed's objections may be sustained without altering either the analysis or conclusion in this Order.

### 2. The United States' Evidentiary Objections

The United States objected to various exhibits to the Declaration of Michael Shea submitted by Reed. Because the Court decides the motion in the United States' favor, those objections are overruled as moot.

### IV. CONCLUSION

The allegedly negligent actions of the BLM—issuing the organizers of Burning Man 1996 a special recreation permit; not enforcing or suspending the permit during the event; failing to warn campers of the danger posed by reckless drivers during the event; and failing to enforce applicable local, state and federal laws during the event—were all discretionary as they involved an element of judgment or choice and the balancing of various policy objectives. The judgment exercised by the BLM is of the type that the discretionary function exception was designed to shield. Accordingly, the Court lacks subject matter jurisdiction over Reed's claims against the United States. The United States' motion for summary judgment (docket no. 50) is therefore GRANTED.

IT IS SO ORDERED.