279 F.3d 660
 SHOSHONE-BANNOCK TRIBES OF the FORT HALL RESERVATION, Plaintiff-Appellee,
v.
SECRETARY, DEPARTMENT OF HEALTH AND HUMAN SERVICES, Tommy G. Thompson;* Indian Health Services, United States Department of Health & Human Services; Michael H. Trujillo, Director of Indian Health Service, United States Department of Health & Human Services; Douglas Black, Director of Office of Tribal Activities, Indian Health Service; James R. Floyd, Portland Area Director, Indian Health Service, United States Department of Health & Human Services, Defendants-Appellants.
Shoshone-Bannock Tribes of the Fort Hall Reservation, Plaintiff-Appellee,
v.
Secretary, Department of Health and Human Services, Tommy G. Thompson; Indian Health Services, United States Department of Health & Human Services; Michael H. Trujillo, Director of Indian Health Service, United States Department of Health & Human Services; Douglas Black, Director of Office of Tribal Activities, Indian Health Service; James R. Floyd, Portland Area Director, Indian Health Service, United States Department of Health & Human Services, Defendants-Appellants.
 No. 98-36022.
 No. 99-35951.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted September 14, 2000.
 Filed October 16, 2001.
 Amended February 4, 2002.
 
 COPYRIGHT MATERIAL OMITTED Jeffrica Jenkins Lee, Department of Justice, Washington, DC, for the appellants.
 Lloyd Benton Miller, Sonosky, Chambers, Sachse, Miller & Munson, Anchorage, AK, for the appellees.
 Appeal from the United States District Court for the District of Oregon; Janice M. Stewart, Magistrate Judge, Presiding. D.C. Nos. CV-96-00459-ST, CV-96-00459-JMS.
 Before: KOZINSKI and KLEINFELD, Circuit Judges, and SCHWARZER,** District Judge.
 ORDER
 The Opinion filed on October 16, 2001, is amended as follows:
 At page 14687 [269 F.3d 948, 955], lines 25-26, replace the sentence "There is no occasion, in this case, for application of the rule interpreting ambiguities in favor of the Indians." with "We need not decide whether the canon of construction for construing ambiguities in favor of Indians would apply in this case."
 At page 14687 [269 F.3d at 955], lines 26-27, delete "For one thing," and begin the sentence with "The phrase."
 At page 14687 [269 F.3d at 955], line 29, to page 14688 [269 F.3d at 955], line 2, delete the text beginning with "We also agree" and ending with "not a treaty." Also, delete the accompanying footnotes, 31 and 32.
 The panel has voted unanimously to deny the petition for rehearing. Judges Kozinski and Kleinfeld have voted to deny the petition for rehearing en banc, and Judge Schwarzer has recommended the same.
 The full court has been advised of the petition for rehearing en banc, and no judge of the court has requested a vote on the petition for rehearing en banc. Fed. R.App. P. 35(b).
 The petition for rehearing and petition for rehearing en banc is DENIED.
 OPINION
 KLEINFELD, Circuit Judge.
 
 
 1
 This case construes an appropriation made under the Indian Self-Determination and Education Assistance Act. We hold that the agency's interpretation of the congressional appropriation of funds was consistent with congressional intent and reverse the district court's award of additional funding for contract support costs.
 
 Facts
 
 2
 Under the Indian Self-Determination and Education Assistance Act,[1] Indian tribes are encouraged to take over administration of various programs that the federal government used to administer for their benefit. On the Fort Hall Reservation in Idaho, the Shoshone-Bannock Tribes took over administration of various health programs from the Indian Health Service, which had previously funded community health care programs.
 
 
 3
 Under the Indian Self-Determination and Education Assistance Act, the tribes may take over not only the direct operations of the programs, but also "administrative functions of the [agency] that support the delivery of services to [the] Indians."[2] The statute provides that along with the programs, the tribes get the money that the government would otherwise have used to administer and perform the services.[3] The government is not allowed to save money by hiring the tribes to perform the programs for less money than the government would have spent. The statute provides that contracts between the government and the tribes for tribal takeover of programs have to include money that shall "not be less than the appropriate Secretary would have otherwise provided for the operation of the programs or portions thereof for the period covered by the contract."[4] Nor is the government allowed to save money on administration. It has to include in contracts with the tribes money covering "contract support costs"[5] for management expenses, even for tasks that "normally are not carried on by the respective Secretary in his direct operation of the program."[6]
 
 
 4
 This appeal concerns "contract support costs," that is, overhead that the Shoshone-Bannock Tribes attribute to managing the health care program they took over from the government. The money at issue is from the appropriation for the 1996 fiscal year. The statute at issue is the appropriation for that year,[7] not a codified law of general application. The Indian Health Service contends that the money for contract support costs was limited to a single pot too small to cover all the tribes that applied, so it awarded it on a first come, first served basis.[8] The Service says that it ran out of money before the Shoshone-Bannock Tribes got to the head of the line.
 
 
 5
 Shoshone-Bannock argues that the way the appropriation law is worded, the Service has to provide the money for contract support costs, either out of that appropriation, or out of other money appropriated to the Service if the part of the Indian Health Service appropriation designated for contract support costs is exhausted. The district court ruled in favor of the Tribes on summary judgment, and the government appeals. The Tribes and the government have agreed on the amount of money the Tribes should get if they prevail, $374,936.05, and it has been deposited in the registry of the district court.
 
 Analysis
 
 6
 The district court had jurisdiction, because the statute expressly confers jurisdiction over civil actions arising under the Indian Self-Determination and Education Assistance Act on the district courts.[9] The final judgment was timely appealed.[10]
 
 
 7
 Shoshone-Bannock argues that it had a contractual right, not just a statutory right, to contract support cost funding. But the language in its contract expressly precludes an independent claim on that basis. It says that the Secretary's obligation is "subject to the availability of appropriations."[11] Thus, the argument has to come back to what the appropriation means.
 
 
 8
 Because of the express language subjecting provision of Indian Self-Determination and Education Assistance Act funds to "availability of appropriations,"[12] and the clear statement that this limitation applies "notwithstanding any other provision in this Act,"[13] Congress has plainly excluded the possibility of construing the contract support costs provision as an entitlement that exists independently of whether Congress appropriates money to cover it. Thus, the only substantial issue in the case is whether Congress did or did not appropriate the money. The Federal Circuit and the District of Columbia Circuit have reached the same conclusion.[14]
 
 
 9
 Congress appropriated approximately $1.7 billion to the Indian Health Service in 1996.[15] Of the $1.7 billion, $7.5 million was appropriated for transitional costs of tribal contracts, which the parties agree are what is at issue.[16] The parties disagree on how to construe the appropriation. The government argues that it had no obligation to spend more than the $7.5 million appropriation on contract support costs. The Tribes argue that the $7.5 million is not a ceiling, and where additional contract support costs were applied for, the Indian Health Service was obligated to pay for them out of its remaining $1.7 billion appropriation. Similar issues were litigated in the Federal Circuit and the District of Columbia Circuit. The Federal Circuit concluded, and the District of Columbia Circuit noted, that the smaller appropriation for contract support costs was all that was available to the tribes in those cases.[17] That would be the end of the case, and we would simply note our agreement with our sister circuits, except that those cases considered a different appropriation with slightly different wording.
 
 
 10
 In Oglala Sioux, Congress had appropriated $1.5 billion for Native American programs "of which not to exceed $95,823,000 shall be for ... contract support costs."[18] The appropriation for fiscal year 1996, at issue in the case at bar, does not say "not to exceed" $7.5 million.[19] By contrast, the 1995 fiscal year appropriation said "not to exceed" roughly $96 million.[20] Instead the appropriation now at issue says "[f]or expenses necessary to carry out the Act ... $1,747,842,000 ..." followed by a string of provisos.[21] The last of the provisos says that of the $1.7 billion, $7.5 million "shall remain available until expended" for items including the contract support costs at issue.[22] The question is whether this wording means that only $7.5 million is available for contract support costs, or that the entire $1.7 billion is available.
 
 
 11
 The district court granted summary judgment to the Tribes on the theory that, unless the Indian Health Service showed that covering the Tribes' contract support costs would reduce availability of funds to other tribes, the Service had to use its general $1.7 billion appropriation, not just the $7.5 million, to cover contract support costs.
 
 
 12
 The problem of tribal claims exceeding amounts appropriated for them has gone on for some time, so the Indian Health Service issued "Indian Self-Determination Memorandum No. 92-2" in July of 1992 to establish an administrative policy for dealing with it. The memorandum defines contract support costs and establishes procedures for computing and awarding them. It has various procedures to deal with shortfalls in different circumstances, such as putting unfulfilled requests first in a subsequent year, selecting requests based on the earliest receipt date, and distributing funds according to each contractor's "proportion of total need." The memorandum treats the total available as the Indian Self-Determination Fund, and the Service allocated the $7.5 million to this fund for the 1996 fiscal year.
 
 
 13
 The appropriation language is arguably ambiguous. The language, $7.5 million "shall remain available until expended" is not an unambiguous cap, as was the "of which not to exceed" language of the earlier appropriation. By themselves, the words might mean that $7.5 million is available, without necessarily implying that other money is unavailable. Alternatively, they could mean that, of the total appropriation, only $7.5 million is available for the contract support costs. The House Appropriations Committee provided explanatory language in its report on the appropriation. The Committee Report speaks to a concern it had "to contain the cost escalation in contract support costs," and says "[t]he Committee has provided $7,500,000 for the Indian Self-Determination Fund ... to be used for new and expanded contracts."[23] This Committee Report language lends itself to the second reading, that only $7.5 million is available, not the first. The most natural reading is that the Committee gave attention to how much of the total appropriation should go to contract support costs for new and expanded contracts and decided that $7.5 million was all they wanted to spend.
 
 
 14
 While this case and other disputes between the Indian Health Service and other tribes were going on, the appropriations process went on, as well. In 1998, Congress eliminated the ambiguity retroactively. In the fiscal year 1999 appropriation, Congress provided by law that "[n]otwithstanding any other provision of law, amounts appropriated to or earmarked in committee reports for the Bureau of Indian Affairs and the Indian Health Service by Public Laws 103-138, 103-332, 104-134, 104-208 and 105-83 for payments to tribes and tribal organizations for contract support costs ... are the total amounts available for fiscal years 1994 through 1998 for such purposes."[24] The string of public laws Congress cited includes Public Law 104-134, which is the fiscal year 1996 appropriation of $7.5 million which "shall remain available until expended." Once Congress thus provided that $7.5 million was the "total amount[ ] available,"[25] there could no longer be a serious question whether the remaining $1.7 billion was also available for this purpose. Any ambiguity was eliminated retroactively.
 
 
 15
 The Tribes argue that the substantive requirement that contract support costs "shall be added"[26] establishes their entitlement to them. As we have explained, this argument cannot withstand the statutory language subjecting contract support costs to "availability of appropriations,"[27] and saying this limitation applies "[n]otwithstanding any other provision in this Act."[28] There is no basis for departing from our two sister circuits that have reached the same conclusion. There is simply no Indian Health Service obligation to fund contract support costs beyond the appropriations made available for that purpose. In a variant of this argument, the Tribes argue that "availability" depends on whether the remaining $1.7 billion is restricted so that the Indian Health Service is prohibited from spending it on contract support costs, and it is not expressly restricted. But the restriction is unambiguous in the "total amount available" language in the fiscal year 1999 appropriation, which is expressly made applicable to the fiscal year 1996 "shall remain available" appropriation.
 
 
 16
 The "availability" language in the fiscal year 1996 appropriation either plainly limits the funds available for contract support to the $7.5 million appropriated for that purpose or, if we were to take the interpretation most favorable to the Tribes, is at best ambiguous, leaving room for an argument that the remaining $1.7 billion is also "available." But the ambiguity, if there is any, is cleared away, both by the Appropriations Committee report explaining the $7.5 million appropriation when it was made and, with no possible ambiguity, by the 1999 "that's all there is" language in § 314. Although "availability" is not the same term as was used in other appropriations, "[i]t is sufficient answer to deny that such words when used in an appropriation bill are words of art or have a settled meaning,"[29] and if the words are ambiguous, it is legitimate to consider the committee report and, most persuasively, the 1999 appropriations language promulgated as law, as well as the administrative interpretation.
 
 
 17
 We need not decide whether the canon of construction for construing ambiguities in favor of Indians would apply in this case. The phrase "subject to the availability of appropriations" has been construed by the Federal Circuit as "clear and unambiguous,"[30] and we do not disagree.
 
 
 18
 Both the Indian Health Service and the Tribes have argued about whether paying more to the Tribes for contract support costs would reduce the availability of money to other tribes. The Indian Health Service did not submit any evidence that it would. But this makes no difference. It is undisputed that there is nothing left of the $7.5 million. Were the tribes challenging how the $7.5 million was divided up, then we might have occasion to decide whether to defer to the administrative agency or to interpret the statute in some other way.[31] But the Tribes in this case do not challenge how the $7.5 million was divided up. The $7.5 million is all gone, so it does not matter whether funding for other tribes would be reduced by allowing more contract support costs in this case. The Tribes' challenge goes to whether the Indian Health Service can limit its expenditures on contract support costs to the $7.5 million or whether it has to use whatever it takes of its entire $1.7 billion appropriation.
 
 
 19
 The Tribes argue that the language in the fiscal year 1999 appropriation, that the $7.5 million is the "total amount available" for contract support costs, cannot alter their entitlement. Their position is that "it does not affect the government's liability incurred years ago."[32] That assumes what is to be established, that there was a liability incurred years ago. The Tribes do not purport to make an inverse condemnation claim. Congress may enact retroactive laws so long as it does so expressly and clearly.[33] Congress enacted this appropriation in 1998, subsequent to the district court opinion, so the district court did not have the benefit of § 314, in which Congress is perfectly clear in its intention to control construction of the 1996 appropriation. The Tribes argue that the Secretary misinterprets § 314, and that it only restricts the Secretary's authority to spend unobligated balances. We conclude, however, that it also affects their right to recover money damages under the judgment because § 314 is unambiguous. Congress plainly said that the appropriated amounts were the total amounts available. Congress did not say that it meant only to restrict the Secretary's authority to spend unobligated balances. Any contractual claim that the tribe might make is vitiated by the fact that none of the $7.5 million was available at any relevant time. There was no final judgment that might complicate applicability of § 314, because the judgment was subject to the instant appeal. Moreover, § 314 applies despite the fact that it was enacted after the district court's decision.
 
 
 20
 The district court analogized this case to United States v. Larionoff,[34] but for several reasons we reject the analogy. Larionoff holds that where a Navy enlisted man made a contractual commitment to reenlist based on the then-existing statute and Navy regulations entitling him to a "variable enlistment bonus," the statute could not properly be construed to take that bonus away.[35] In this case, though, the Tribes' contract was expressly made "subject to the availability of appropriations," unlike the reenlistment commitment in Larionoff. Also, in Larionoff, the Court said that in light of the "serious constitutional questions" that would arise from a retroactive deprivation of the bonus, it "would not lightly conclude, in the absence of clear expression of congressional intent" that Congress meant to affect service members entitled to receive variable reenlistment bonuses.[36] In the case at bar, the fiscal year 1999 appropriation is the "clear expression of congressional intent" that was absent in Larionoff.
 
 
 21
 REVERSED.
 
 
 
 Notes:
 
 
 *
 Tommy G. Thompson is substituted for his predecessor, Donna Shalala, as Secretary of Health and Human Services. Fed. R.App. P. 43(c)(2)
 
 
 **
 The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 See 25 U.S.C. § 450-450n (2000).
 
 
 [2]
 25 U.S.C. § 450f(a)(1) (2000)
 
 
 [3]
 Id.
 
 
 [4]
 25 U.S.C. § 450j-1(a)(1) (2000)
 
 
 [5]
 The statute, 25 U.S.C. § 450, does not define "contract support costs." Rather it defines both "direct program costs," 25 U.S.C. § 450b(c) ("Costs that can be identified specifically with a particular contract objective."), and "indirect costs," 25 U.S.C. § 450b(f) ("Costs incurred for a common or joint purpose benefitting more than one contract objective....")
 
 
 [6]
 See 25 U.S.C. § 450j-1(a)(2) (2000), which provides:
 There shall be added to the amount required by paragraph (1) contract support costs which shall consist of an amount for the reasonable costs for activities which must be carried on by a tribal organization as a contractor to ensure compliance with the terms of the contract and prudent management, but which —
 (A) normally are not carried on by the respective Secretary in his direct operation of the program; or
 (B) are provided by the Secretary in support of the contracted program from resources other than those under contract.
 
 
 [7]
 See Dep't of Interior and Related Agencies Appropriation Bill, 1996, H.R.Rep. No. 104-173, at 97 (1995) (Add.30a).
 
 
 [8]
 See Indian Self-Determination Memorandum 92-2 (Feb. 27, 1992). This is an internal agency guideline adopted pursuant to 25 U.S.C. § 450k(a)(1) and 25 C.F.R. § 900.5. The policy stated in pertinent part:
 Funds for new and expanded contracts [covering CSC] will be allocated by IHS headquarters from the ISD [Indian Self-Determination] Fund on a monthly basis until expended. If permitted by appropriations act, any funds that remain at the end of the fiscal year will be added to any ISD funds available in the subsequent year. If funds are exhausted at any point in the fiscal year, requests received thereafter will be considered first for funding in the subsequent year from funds appropriated for this purpose.
 . . .
 If funds from the ISD Fund are inadequate to fully fund all requests, then requests to be funded that month will be selected based on the earliest receipt date.
 
 
 [9]
 See 25 U.S.C. § 450m-1(a) (2000).
 
 
 [10]
 See Fed. R.App. P. 4(a)(1)(B).
 
 
 [11]
 The self-determination contract Shoshone-Bannock signed with the Indian Health Service incorporated the mandatory language from 25 U.S.C. § 450l(c): "[s]ubject to the availability of appropriations, the Secretary shall make available to the Contractor the total amount specified in the annual funding agreement...." This language is mandatory in all self-determination contracts. See 25 U.S.C. § 450l(a).
 
 
 [12]
 See 25 U.S.C. § 450j-1(b) (2000), which provides:
 Notwithstanding any other provision in this subchapter, the provision of funds under this subchapter is subject to the availability of appropriations and the Secretary is not required to reduce funding for programs, projects, or activities serving a tribe to make funds available to another tribe or tribal organization under this subchapter.
 
 
 [13]
 Id.
 
 
 [14]
 See Babbitt v. Oglala Sioux Tribal Pub. Safety Dep't, 194 F.3d 1374, 1378 (Fed.Cir. 1999), cert. denied, 530 U.S. 1203, 120 S.Ct. 2196, 147 L.Ed.2d 233 (2000); Ramah Navajo Sch. Bd. v. Babbitt, 87 F.3d 1338, 1345 (D.C.Cir.1996).
 
 
 [15]
 See Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1996, Pub.L. 104-134, 110 Stat. 1321, 1321-189 (1996).
 
 
 [16]
 See id., which provided:
 $7,500,000 shall remain available until expended, for the Indian Self-Determination Fund, which shall be available for the transitional costs of initial or expanded tribal contracts, grants or cooperative agreements with the Indian Health Service under the provisions of the Indian Self-Determination Act....
 
 
 [17]
 See Oglala Sioux, 194 F.3d at 1378; Ramah, 87 F.3d at 1345.
 
 
 [18]
 Oglala Sioux, 194 F.3d at 1376.
 
 
 [19]
 110 Stat. 1321, 1321-189
 
 
 [20]
 Interior Appropriations Act of 1995, Pub.L. 103-332, 108 Stat. 2499, 2511 (1994)
 
 
 [21]
 110 Stat. 1321, 1321-189
 
 
 [22]
 See id.
 
 
 [23]
 H. Rep. No. 104-173, at 97 (1995)
 
 
 [24]
 Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub.L. No. 105-277, 112 Stat. 2681, 2681-288 (1998) (§ 314)
 
 
 [25]
 Id.
 
 
 [26]
 25 U.S.C. § 450j-1(a)(2)
 
 
 [27]
 See 25 U.S.C. § 450j-1(b).
 
 
 [28]
 Id.
 
 
 [29]
 United States v. Dickerson, 310 U.S. 554, 561-62, 60 S.Ct. 1034, 84 L.Ed. 1356 (1940).
 
 
 [30]
 Oglala Sioux, 194 F.3d at 1378.
 
 
 [31]
 That is the issue on which the District of Columbia Circuit granted relief inRamah, 87 F.3d at 1346.
 
 
 [32]
 Appellee's Brief at 51
 
 
 [33]
 Landgraf v. USI Film Products, 511 U.S. 244, 270, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).
 
 
 [34]
 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977)
 
 
 [35]
 Id. at 877, 97 S.Ct. 2150.
 
 
 [36]
 Id. at 879, 97 S.Ct. 2150.