Bartley H. O'TOOLE; Lilly E. O'Toole,
Plaintiffs–Appellants,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 01–15310.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 13, 2002.

Filed July 10, 2002.

Stewart R. Wilson, Wilson and Barrows, Ltd., Elko, NV, for the plaintiffs-appellants.

Lowell V. Sturgill, Jr., United States Department of Justice, Washington, DC, for the defendant-appellee.

Before: HAWKINS and SILVERMAN, Circuit Judges, and RESTANI, Judge.*

* Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

SILVERMAN, Circuit Judge.

The O'Tooles have a ranch upstream from government-owned property held in trust by the Bureau of Indian Affairs. They allege that the BIA's negligent maintenance of the irrigation system on its property caused the river to back up onto their land, resulting in considerable damage. The district court dismissed the case for lack of subject matter jurisdiction, finding that the government's actions fell within the discretionary function exception to the Federal Tort Claims Act. We hold that the BIA's decision to spend its limited funds in other ways, allowing the irrigation system to fall into disrepair, is not protected by the discretionary function exception to the FTCA.

## I. BACKGROUND

The O'Tooles own Home Ranch, an 800–acre ranch in Nye County, Nevada, used primarily for raising livestock and hay production. Home Ranch's water and irrigation systems are supplied by the Reese River. Downstream on the Reese River from Home Ranch is Bowler Ranch. Bowler Ranch was purchased by the United States in 1937, when it became part of the Yomba Shoshone Indian Reservation. The land is held in trust for the Shoshone Indian Tribe by the United States, under the direct control of the BIA, and consists of approximately 1,200 irrigated acres that also draw water from the Reese River. The original irrigation system on Bowler Ranch dates from the 1860s, and additional irrigation dams were built around 1980.

The O'Tooles allege that, prior to 1983, the United States performed the needed periodic maintenance on the Bowler Ranch irrigation system. On one occasion, the

government even went so far as to enter Home Ranch to clean out river sediment deposited there because the irrigation canals on the Reservation had not been adequately cleaned. The O'Tooles allege that since 1983, however, almost no maintenance work has been performed on the upper half of Bowler Ranch. By 1998, according to the O'Tooles, this negligent lack of maintenance caused water and sediment from the Reese River to back up onto and flood the O'Tooles' property, resulting in over $346,213 in damage in lost crops and sediment removal. The O'Tooles claim that they had warned the United States that this would happen, but to no avail.

The O'Tooles further allege that the United States contracted with the Shoshone Tribe in 1989 to maintain the Bowler Ranch irrigation system. Part of this agreement obliged the Tribe to "maintain all delivery and supply canals in good condition," to "keep the canals and laterals from plugging up with weeds and silt," to "[c]ontrol[ ] vegetative growth along the canals and laterals," and to "[m]aintain [the] river channel by removal of excessive silt and vegetation so as to provide for runoff in a manner that does not damage the irrigation system and adjacent fields." The O'Tooles claim that the United States paid the Tribe over $300,000 under the contract, despite the Tribe's failure to perform. They allege that, in addition to their own warnings, the government also had numerous reports prepared which alerted it to the condition of the irrigation system.

After exhausting their administrative remedies, the O'Tooles filed a complaint against the United States, alleging negligence under the FTCA. The United States moved to dismiss, claiming its actions fell under the discretionary function exception to the FTCA, and depriving the court of

subject matter jurisdiction. The core of the government's argument is that the BIA has never had the resources necessary to repair the irrigation system on the Reservation, which has been repeatedly damaged by unusually heavy flooding. As a result, the BIA had "to prioritize among numerous competing demands for repair and maintenance on the Yomba Reservation irrigation system, and to address the needs that were most pressing in each fiscal year." The government contends that its failure to repair and maintain the Bowler Ranch irrigation system was the result of a policy decision involving allocation of scarce BIA resources. The district court agreed and dismissed the case. The O'Tooles argue that dismissal for lack of jurisdiction was in error.

## II. JURISDICTION AND STANDARD OF REVIEW

 This court has jurisdiction pursuant to 28 U.S.C. § 1291. "A district court's determination that it lacks subject matter jurisdiction under the FTCA and a district court's application of the discretionary function exception are ... reviewed *de novo*." *Marlys Bear Medicine v. United States ex rel. Sec'y of Dept. of Interior*, 241 F.3d 1208, 1213 (9th Cir. 2001). The plaintiff has the burden of showing there are genuine issues of material fact as to whether the exception should apply, while the government bears the ultimate burden of establishing that the exception applies. *Miller v. United States*, 163 F.3d 591, 594 (9th Cir.1998). All of the factual allegations in the plaintiff's complaint are to be taken as true in reviewing a discretionary function exception dismissal under the FTCA. *Berkovitz v. United States*, 486 U.S. 531, 540, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988).

## III. ANALYSIS

### A. Overview

As sovereign, the United States "can be sued only to the extent that it has waived its immunity" from suit. *United States v. Orleans*, 425 U.S. 807, 814, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976). The Federal Tort Claims Act waives the federal government's immunity from suit for a discrete class of lawsuits. 28 U.S.C. §§ 2671–80. It provides for government liability for "tort claims ... in the same manner and to the same extent as a private individual under like circumstances...." *Id.* at § 2674. The FTCA's broad waiver of sovereign immunity is limited by 28 U.S.C. § 2680, "a statutory reservation of sovereign immunity for a particular class of tort claims." *Gager v. United States*, 149 F.3d 918, 920 (9th Cir. 1998). Where an exception to the FTCA under § 2680 applies, the United States has elected not to waive its immunity from suit, and courts are without jurisdiction over such claims.

The FTCA exception at issue in this case, the discretionary function exception, precludes tort liability for "[a]ny claim based upon an act or omission of an employee of the Government ... based upon ... a discretionary function or duty...." 28 U.S.C. § 2680(a). The discretionary function exception to the FTCA serves to "insulate[ ] the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." *Berkovitz*, 486 U.S. at 537. It reflects Congress's "wish[ ] to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). In other words, "if judicial review

would encroach upon th[e] type of balancing done by an agency, then the [discretionary function] exception" applies. *Begay v. United States*, 768 F.2d 1059, 1064 (9th Cir.1985).

Application of the discretionary function exception involves a two-part analysis. *See United States v. Gaubert*, 499 U.S. 315, 324–25, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Berkovitz*, 486 U.S. at 536–38. First, we consider whether the government action at issue—here, the BIA's failure to adequately maintain the irrigation system on Bowler Ranch—involves the exercise of judgment or choice by the agency. Does "a federal statute, regulation, or policy specifically prescribe[ ] a course of action" that was not followed? *Berkovitz*, 486 U.S. at 536. If so, the agency's actions are not discretionary, the exception does not apply, and courts have jurisdiction over lawsuits alleging tortious harm resulting from such actions. There can be no exercise of discretion where an agency "has no rightful option but to adhere to [a] directive." *Id.* In *Berkovitz*, for example, the Division of Biologic Standards of the National Institutes of Health was statutorily required to receive certain manufacturer data prior to issuing licenses for polio vaccines. The Supreme Court held that the discretionary function exception did not apply to a plaintiff's claim that the agency had issued a license without first receiving that data. 486 U.S. at 540–45.

Where the agency's course of conduct is not mandated by statute or regulation, an FTCA plaintiff still can prevail under the second part of the analysis, which examines whether the government actions at issue "are of the nature and quality that Congress intended to shield from tort liability." *Varig*, 467 U.S. at 813. Government actions involving the ex-

ercise of judgment or choice are exempted from suit under the FTCA only if they are "susceptible to policy analysis," *Gaubert*, 499 U.S. at 325, and involve a "decision[ ] grounded in social, economic, and political policy," *id.* at 323 (quoting *Varig*, 467 U.S. at 814). In *Gaubert*, for example, the Court held that the discretionary function exception protected the government from liability for the allegedly tortious conduct of federal regulators in the day-to-day operation of a troubled savings and loan. 499 U.S. at 327–34. Likewise, in *Varig*, the Supreme Court held that the discretionary function exception insulated the government from a wrongful death action alleging that the Civil Aeronautics Agency was negligent in issuing a "type certificate" to an airliner that caught fire in flight. 467 U.S. at 814–20. "The mere association ... with regulatory concerns," however, is insufficient to trigger the discretionary function exception; rather, "exempt decisions are those fraught with ... public policy considerations." *Cope v. Scott*, 45 F.3d 445, 449 (D.C.Cir.1995) (internal quotation marks omitted) (alteration in original) (citation omitted).

### B. Did the BIA Deviate from a Required Duty?

■ In applying part one of the discretionary function exemption analysis, we examine the relevant statutes and regulations to determine whether the agency deviated from some required action or process. We are aware of no statute or regulation, however, that mandates adequate maintenance of the Bowler Ranch irrigation system. No "federal statute, regulation, or policy specifically prescribes a course of action" to which the BIA did not adhere. *Berkovitz*, 486 U.S. at 536. We note, however, that 25 C.F.R. § 171.1 provides that:

> The Officer–in–Charge [of an Indian Irrigation Project] will be guided by the basic requirement that the operation will be so administered as to provide the maximum possible benefits from the project's or unit's constructed facilities. *The operations will insure safe, economical, beneficial, and equitable use of the water supply and water conservation.*

25 C.F.R. § 171.1(c) (emphasis added). A plausible argument can be made that this regulation imposes on the BIA a duty to "insure" safe operations; that is, the BIA must operate its irrigation systems in a way that does no harm to people or property. However, we assume for the sake of discussion that this regulation provides only general guidance, rather than a mandatory duty of the specific sort found in *Berkovitz*.

■ The O'Tooles maintain that, because the government contract with the Tribe to maintain the irrigation system was entered into pursuant to the Indian Self–Determination and Self–Assistance Program, the United States was required to fully fund this contract. The O'Tooles rely on 25 U.S.C. § 450j–1(a)(1), which provides: "The amount of funds provided under the terms of self-determination contracts ... shall not be less than the appropriate Secretary would have otherwise provided for the operation of the programs ... without regard to any organizational level within the Department of the Interior ... at which the program ... is operated." This language ensures that "[t]he government is not allowed to save money by hiring the tribes to perform ... programs for less money than the government would have spent." *Shoshone–Bannock Tribes v. Secretary, Dept. of Health and Human Servs.*, 279 F.3d 660, 663 (9th Cir.2002). The O'Tooles argue that this statute removes any element of choice from government funding and expenditure decisions in this area.

The O'Tooles overlook the fact that the following section, 25 U.S.C. § 450j–1(b), provides that, "[n]otwithstanding any other provision in this subchapter, the provision of funds ... is subject to the availability of appropriations ...." In other words, the language of § 450j–1(a)(1) remains subject to the availability of funds. Thus, BIA's argument, that insufficient funding prevented adequate maintenance of the irrigation system, is a valid defense to the allegation that the maintenance agreement with the Tribe was inadequately funded under § 450j–1(a)(1). Section 450j–1(b) forecloses the argument that the government has an affirmative duty to provide full funding for projects entered into under this Program. *See Shoshone–Bannock Tribes,* 279 F.3d at 665.

Because the government did not deviate from actions or policies mandated by statute or regulation in failing to adequately maintain the Bowler Ranch irrigation system, the BIA's irrigation repair decisions were the product of choice, protected under the first part of the discretionary function exception test.

### C. Was the BIA's Action Grounded in Policy Considerations?

█ The O'Tooles can still prevail under the second part of the discretionary function exemption if the government's decision was not "susceptible to a policy analysis grounded in social, economic, or political concerns." *Miller v. United States,* 163 F.3d 591, 595 (9th Cir.1998) (citing *Gaubert,* 499 U.S. at 325). As has been noted by numerous courts, reconciling conflicting case law in this area can be difficult. *See, e.g., Varig,* 467 U.S. at 811–12 (noting that "the Court's reading of the [FTCA] has admittedly not followed a straight line"); *Shansky v. United States,* 164 F.3d 688, 693 (1st Cir.1999) (observing that the "case-by-case approach" of this

second prong "has led to some disarray," and citing cases whose holdings are in direct conflict).

At one extreme of the policy prong of the analysis, where the discretionary function exception provides no defense to liability, are those agency decisions totally divorced from the sphere of policy analysis. For example, a government official who drives negligently, causing an accident, cannot be said to have exercised his judgment in a way related to public policy. "Although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy." *Gaubert,* 499 U.S. at 325 n. 7; *see also Dalehite v. United States,* 346 U.S. 15, 34, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). The "discretion" exercised by the negligent government driver is just not the kind of decisionmaking the discretionary function exception protects.

At the other extreme are those agency actions fully grounded in regulatory policy, where the government employee's exercise of judgment is directly related to effectuating agency policy goals. Decisions like these—such as the regulation and oversight of S & Ls by the Federal Home Loan Bank Board, *see Gaubert,* 499 U.S. at 332–34; the release of vaccine lots by the Bureau of Biologics of the Food and Drug Administration, *see Berkovitz,* 486 U.S. at 545–48; and the enforcement and implementation of airline safety standards by the Federal Aeronautics Agency, *see Varig,* 467 U.S. at 814–20—are the kinds of decisions Congress empowered agencies to make and which the discretionary function exception shields from liability.

█ The question is, where does this case fall along the spectrum? The government characterizes its decision to forego needed repairs and maintenance as a proper exercise of agency discretion, in which

the BIA was forced to make a judgment call to achieve its policy goals. The O'Tooles argue that allowing the irrigation system to fall into disrepair is no more a conscious regulatory choice than failing to maintain the brakes on a car. Is the government's choice not to make needed repairs on its property due to budgetary constraints more like lighthouse maintenance, *see Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955) (discretionary function exception does not apply), or more like regulation of airline safety, *see Varig*, 467 U.S. at 814–20 (discretionary function exception applies)? While there is unquestionably an element of subjective characterization to the second part of the discretionary function exception analysis, we believe the O'Tooles have the better argument. We hold that an agency's decision to forego, for fiscal reasons, the routine maintenance of its property—maintenance that would be expected of any other landowner—is not the kind of policy decision that the discretionary function exception protects. Because the BIA advances no other reason for its actions or inactions aside from the choice to spend its limited funds in other ways, the discretionary function exception does not apply.

We find support for our holding in this Circuit's precedent. In *ARA Leisure Servs. v. United States*, 831 F.2d 193 (9th Cir.1987), a tour bus company sued the United States and the National Park Service for negligent design and maintenance of a road. We held that the government's decisions as to design and construction were protected by the discretionary function exception, but "the failure to maintain[the road] in a safe condition" was not "a decision grounded in social, economic, or political policies." *Id.* at 195. In this context, we considered and rejected the same allocation-of-resources argument put forth by the BIA, noting that "the fact that

Park Service maintenance personnel were required to work within a budget does not make their failure to maintain[the road] a discretionary function for purposes of the FTCA." *Id.* We held that "[t]he allocation of funds among projects," which lies at the heart of the BIA's justification for its failure to repair, was not a policy decision "of the nature and quality that Congress intended to shield from tort liability" under the second prong of the discretionary function exception analysis. *Id.* at 196.

The Supreme Court has observed that Congress, in adopting the FTCA, sought to prevent the unfairness of allowing "the public as a whole" to benefit "from the services performed by Government employees," while allocating "the entire burden" of government employee negligence to the individual, "leav[ing] him destitute or grievously harmed." *Rayonier Inc. v. United States*, 352 U.S. 315, 320, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957). To apply the discretionary function exception to shield the BIA's alleged negligence would unfairly allocate the resulting harm on the O'Tooles. And, in holding the government liable for harm allegedly resulting from negligent maintenance of a lighthouse in *Indian Towing*, the Court observed:

> The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light . . ., it was obligated to use due care to make certain that the light was kept in good working order. . . . If the Coast Guard failed in its duty and damage was thereby caused . . ., the United States is liable under the [FTCA].

*Indian Towing Co. v. United States*, 350 U.S. 61, 69, 76 S.Ct. 122, 100 L.Ed. 48 (1955); *see also Berkovitz*, 486 U.S. at 538 n. 3 (citing this passage with approbation). Similarly, the BIA was under no obligation to acquire Bowler Ranch, but, once it did, it also acquired the obligation to keep its

irrigation system from causing harm to others to the same extent that a private landowner must. The O'Tooles' lawsuit involves a mundane question of routine ditch maintenance. It is not the sort of public policy issue that the discretionary function exception is designed to protect. Of course, our holding goes only to whether the district court has jurisdiction over the O'Tooles' negligence action. We express no opinion as to the merits of their claim. *See Cope*, 45 F.3d at 448.

 The danger that the discretionary function exception will swallow the FTCA is especially great where the government takes on the role of a private landowner. *Cf. Gotha v. United States*, 115 F.3d 176, 179 (3d Cir.1997) ("[I]f the word 'discretionary' is given a broad construction, it could almost completely nullify the goal of the [FTCA]."). Every slip and fall, every failure to warn, every inspection and maintenance decision can be couched in terms of policy choices based on allocation of limited resources. As we have noted before in the discretionary function exception context, "[b]udgetary constraints underlie virtually all governmental activity." *ARA Leisure Servs.*, 831 F.2d at 196. Were we to view inadequate funding alone as sufficient to garner the protection of the discretionary function exception, we would read the rule too narrowly and the exception too broadly. Instead, in order to effectuate Congress's intent to compensate individuals harmed by government negligence, the FTCA, as a remedial statute, should be construed liberally, and its exceptions should be read narrowly. *See, e.g., Kielwien v. United States*, 540 F.2d 676, 681 (4th Cir.1976) ("The [FTCA] is remedial and should be liberally construed to grant the relief contemplated by Congress . . . .").

The BIA's decision to allow the irrigation system on Bowler Ranch to fall into disrepair to the detriment of neighboring landowners does not fall within the protection of the discretionary function exception to the FTCA. It is less like an FDA decision not to approve a drug for sale, or a National Park Service decision not to put up a guardrail that will block visitors' views, than like a government employee's negligent driving. It was not a decision "susceptible to policy analysis," *Gaubert*, 499 U.S. at 325, or "grounded in social, economic, and political policy," *id.* at 323 (quoting *Varig*, 467 U.S. at 814). We therefore reverse the district court's dismissal for lack of jurisdiction.

REVERSED AND REMANDED.