**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LORRIN WHISNANT, individually,
    *Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,
    *Defendant-Appellee.*

No. 04-35340

D.C. No.
CV-03-05121-FDB

OPINION

Appeal from the United States District Court
for the Western District of Washington
Franklin D. Burgess, District Judge, Presiding

Argued and Submitted
February 18, 2005—Seattle, Washington

Filed March 11, 2005

Before: Betty B. Fletcher, Ronald M. Gould, Circuit Judges,
and Samuel P. King, District Judge.*

Opinion by Judge B. Fletcher

---

*Honorable Samuel P. King, Senior United States District Judge for the
District of Hawaii, sitting by designation.

## COUNSEL

Darrell L. Cochran, Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, Tacoma, Washington, for the plaintiff-appellant. Also on the briefs was Lincoln Beauregard.

Quyhn Vu Bain, Department of Justice, Washington, D.C., for the defendant-appellee. Also on the briefs was Kirsten Wilkerson.

---

## OPINION

B. FLETCHER, Circuit Judge:

Plaintiff-appellant Lorrin Whisnant appeals the district court's dismissal of his Federal Tort Claims Act suit against the United States for negligence in its operation of a commissary on a naval base. Whisnant claims he became ill as a result of regular exposure to the toxic mold the government negligently allowed to colonize the commissary's meat department over a period of three years. Holding this action barred by the discretionary function exception to the FTCA, the district court dismissed for lack of subject matter jurisdiction. We hold that the government's alleged failure to maintain safe and healthy premises was not a decision susceptible to considerations of social, economic or political policy. We therefore reverse the dismissal of Whisnant's suit.

## I. BACKGROUND

Where a defendant in its motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) asserts that the allegations in the complaint are insufficient to establish subject matter jurisdiction as a matter of law (to be distinguished from a claim that the allegations on which jurisdiction depends are not true as a matter of fact), we take the allegations in the plaintiff's complaint as true. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

Plaintiff-appellant Lorrin Whisnant worked for Northern Fish Products, Inc., which had a contract to provide seafood products to the commissary at the United States Navy's Ban-

gor Submarine Base in Silverdale, Washington. As part of his job, Whisnant made weekly product deliveries to the Bangor Commissary and oversaw Northern Fish employees who staffed the fish counter, which is in the commissary's meat department. These tasks required Whisnant to come to the commissary for a three- to four-hour period at least once every week to two weeks.

The commissary is operated and maintained by the Defense Commissary Agency ("DeCA"), a government agency. DeCA regulations require periodic safety inspections, but it is up to DeCA employees to decide how and when to conduct the inspections. Though DeCA personnel are responsible for safety, the base contracts out its maintenance work to Johnson Controls.

As early as June 1997, safety inspection reports by Johnson Controls showed the accumulation of mold in the meat department of the commissary. Over the course of the next three years, several customers and employees of the commissary became ill; symptoms included seizures, nausea and dizziness, irritation to eyes and blurred vision, and feeling "tingly" and short of breath. Finally, tests conducted in October 2000 revealed that toxic, carcinogenic molds were colonizing the meat department. In response, the government closed the meat market on November 1, 2000; it remained closed until December of that year. As a result of his exposure to the mold prior to the closure of the meat department, Whisnant contracted pneumonia, and experienced headaches, swollen glands, sore throat, persistent cough, and other health problems.

In March 2003, Whisnant sued the United States under the Federal Tort Claims Act (FTCA) for damages for its negligence, which caused severe health problems for Whisnant and loss of consortium with his two motherless children. The FTCA confers subject matter jurisdiction on the federal district courts to hear tort actions against the federal government

for negligence of its employees under circumstances in which the United States, if it were a private party, would be liable under the law of the place where the tortious act or omission occurred. 28 U.S.C. § 1346(b)(1). Whisnant alleged that the government ignored indications of the dangerous condition of the meat department and intentionally or recklessly or both intentionally and recklessly permitted employees and customers to work and shop at the commissary in spite of health hazards about which the government knew or should have known. The government moved to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, on the ground that Whisnant's suit was barred by the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a) (providing that the FTCA shall not apply to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused").

The district court granted the motion to dismiss. Applying the Supreme Court's two-part test for the applicability of the discretionary function exception, the court found the government's actions to have been discretionary because DeCA regulations did not prescribe a specific course of action with respect either to mold specifically or inspections generally, and because the government's choice in selecting an independent contractor was a decision grounded in policy considerations. The court rejected Whisnant's argument that the discretionary exception did not apply because he was suing on the basis of the government's negligence in inspecting the premises rather than the government's negligence in selecting Johnson Controls as its maintenance contractor: according to the court, Whisnant's "allegations of negligence are irrelevant" to the jurisdictional question. The court also rejected Whisnant's claim that the government's conduct fell outside of the exception because it occurred at the "operational" rather than the "planning or policy-making" level: the court

found that the Supreme Court had abolished the operational-planning distinction.

## II. ANALYSIS

A dismissal for lack of subject matter jurisdiction is a final judgment over which this court has jurisdiction under 28 U.S.C. § 1291, *McGowan v. Scoggins*, 890 F.2d 128, 129 (9th Cir. 1989), and is reviewed de novo, *Kildare v. Saenz*, 325 F.3d 1078, 1082 (9th Cir. 2003).

**[1]** As the district court correctly noted, the Supreme Court has prescribed a two-part test for determining the applicability of the discretionary function exception. *See United States v. Gaubert*, 499 U.S. 315, 322-25 (1991); *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). Courts are to ask first whether the challenged action was a discretionary one — i.e., whether it was governed by a mandatory statute, policy, or regulation. If the action is not discretionary, it cannot be shielded under the discretionary function exception. Second, courts ask whether the challenged action is of the type Congress meant to protect — i.e., whether the action involves a decision susceptible to social, economic, or political policy analysis. *O'Toole v. United States*, 295 F.3d 1029, 1033-34 (9th Cir. 2002) (summarizing *Gaubert/Berkovitz* test). It is the government's burden to demonstrate the applicability of the discretionary function exception. *Bear Medicine v. United States ex rel. Sec'y of the Dep't of the Interior*, 241 F.3d 1208, 1213 (9th Cir. 2001).

**[2]** Application of the first prong is straightforward in Whisnant's case. No statute, policy, or regulation prescribed the specific manner in which the commissary was to be inspected or a specific course of conduct for addressing mold. The parties are in agreement on this point.

The dispute in this case concerns the application of the second *Gaubert/Berkovitz* prong. We have recently remarked

upon the difficulty of charting a clear path through the weaving lines of precedent regarding what decisions are susceptible to social, economic, or political policy analysis. *See O'Toole*, 295 F.3d at 1035. Government actions can be classified along a spectrum, ranging from those "totally divorced from the sphere of policy analysis," such as driving a car, to those "fully grounded in regulatory policy," such as the regulation and oversight of a bank. *Id.* (citing *Gaubert*, 499 U.S. at 325 n.7, 332-34, for these examples). But determining the appropriate place on the spectrum for any given government action can be a challenge.

We begin by noting the lines of analysis that are foreclosed. Specifically, the Supreme Court has rejected two categorical approaches to this area of law. First, the applicability of the exception does not depend on whether the relevant decision was made by an individual at the "operational" or "planning" level. *See Gaubert*, 499 U.S. at 325-26. Second, actions that are regulatory or "uniquely governmental" in nature are not automatically covered by the exception by virtue of that designation. *See Berkovitz*, 486 U.S. at 538-39.

**[3]** A review of circuit precedent reveals two trends in the law that bear particularly on Whisnant's case. First, a dominant theme in our case law is the need to distinguish between design and implementation: we have generally held that the *design* of a course of governmental action is shielded by the discretionary function exception, whereas the *implementation* of that course of action is not.[1] Second, and relatedly, matters

---

[1] The design/implementation distinction should be differentiated from the operational/planning distinction rejected in *Gaubert*: the former concerns the nature of the decision, while the latter concerns the identity of the decisionmaker. *Cf. Gaubert*, 499 U.S. at 325 ("It is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." (citation, internal quotation marks, and alteration omitted)). There is nothing to prevent a low-level government official from selecting a course of action or a higher-level official from implementing one.

of scientific and professional judgment — particularly judgments concerning safety — are rarely considered to be susceptible to social, economic, or political policy.

Thus, for example, in a suit alleging government negligence in the design and maintenance of a national park road, we held that designing the road without guardrails was a choice grounded in policy considerations and was therefore shielded under the discretionary function exception, but maintaining the road was a safety responsibility not susceptible to policy analysis. *See ARA Leisure Servs. v. United States*, 831 F.2d 193, 195 (9th Cir. 1987). Similarly, in a suit alleging government negligence in the design and construction of an irrigation canal, we held that the decision not to line the canal with concrete was susceptible to policy analysis, but the failure to remove unsuitable materials during construction was not. *See Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1027-28, 1031 (9th Cir. 1989). In three cases concerning injuries resulting from the government's failure to post warnings concerning hazards present in national parks, we held that the government's decision not to post signs warning of obvious dangers such as venturing off marked trails to walk next to the face of a waterfall, and the government's decision to use brochures rather than posted signs to warn hikers of the dangers of unmaintained trails, involved the exercise of policy judgment of the type Congress meant to shield from liability, *Valdez v. United States*, 56 F.3d 1177, 1178, 1180 (9th Cir. 1995); *Childers v. United States*, 40 F.3d 973, 976 (9th Cir. 1994), but that such policy judgment was absent when the government simply failed to warn of the danger to barefoot visitors of hot coals on a park beach, *Summers v. United States*, 905 F.2d 1212, 1215 (9th Cir. 1990). And in an action for the death of a prospective logger "trying out" for a job with a government contractor at a logging site under the management of a government agency, we held that while the government's authorization of the contract was protected under the discretionary function exception, the government's failure

to monitor and ensure safety at the work site was not. *Bear Medicine*, 241 F.3d at 1212, 1214, 1217.

**[4]** All of these cases comport with the Supreme Court's pronouncement in *Indian Towing Co. v. United States*, 350 U.S. 61 (1955), in which the Court held that the government could not escape liability for negligent maintenance of a lighthouse:

> The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light . . . , it was obligated to use due care to make certain that the light was kept in good working order; and, if the light did become extinguished, then the Coast Guard was further obligated to use due care to discover this fact and to repair the light or give warning that it was not functioning. If the Coast Guard failed in its duty and damage was thereby caused to petitioners, the United States is liable under the [Federal] Tort Claims Act.

*Id.* at 69.[2] As we have summarized: "The decision to adopt safety precautions may be based in policy considerations, but the implementation of those precautions is not. . . . [S]afety measures, once undertaken, cannot be shortchanged in the name of policy." *Bear Medicine*, 241 F.3d at 1215, 1216-17.[3]

---

[2]Although the analysis in *Indian Towing* is not addressed to the discretionary function exception, *see* 350 U.S. at 64, subsequent Supreme Court precedent has treated *Indian Towing* as relevant authority in this area, *see Berkovitz*, 486 U.S. at 538 n.3 ("The decision in *Indian Towing* . . . illuminates the appropriate scope of the discretionary function exception."), and our court has followed suit, *see, e.g.*, *O'Toole*, 295 F.3d at 1036; *Alfrey v. United States*, 276 F.3d 557, 567 (9th Cir. 2002); *Nat'l Union Fire Ins. v. United States*, 115 F.3d 1415, 1419 (9th Cir. 1997).

[3]Our case law reveals one exception — not relevant here — to the design/implementation distinction: The implementation of a government policy *is* shielded where the implementation itself implicates policy concerns, such as where government officials must consider competing fire-

**[5]** Under these principles, Whisnant's suit is not barred by the discretionary function exception. Whisnant does not allege that the government was negligent in designing its safety inspection procedures; rather, he charges that the government was negligent in following through on those procedures to safeguard the health of employees and customers of the Bangor commissary. Like the government's duties to maintain its roads in safe condition, to ensure the use of suitable materials in its building projects, and to monitor the safety of its logging sites, the government's duty to maintain its grocery store as a safe and healthy environment for employees and customers is not a policy choice of the type the discretionary function exception shields. Cleaning up mold involves professional and scientific judgment, not decisions of social, economic, or political policy. "Indeed, the crux of our holdings on this issue is that a failure to adhere to accepted professional standards is not susceptible to a policy analysis." *Bear Medicine*, 241 F.3d at 1217 (internal quotation marks omitted); *see also In re Glacier Bay*, 71 F.3d 1447, 1453 (9th Cir. 1995) ("Decisions involving the application of objective scientific standards are not insulated by the discretionary function exception because they do not involve the weighing of economic, political and social policy." (quoting *Kennewick*, 880 F.2d at 1030) (alterations omitted)). Because removing an obvious health hazard is a matter of safety and not policy, the government's alleged failure to control the accumulation of toxic mold in the Bangor commissary cannot be protected under the discretionary function exception.

The government argues that implementation of the DeCA regulations regarding health and safety required employees

---

fighter safety and public safety considerations in deciding how to fight a forest fire, *see Miller v. United States*, 163 F.3d 591, 595-96 (9th Cir. 1998), balance prison safety and inmate privacy considerations in deciding how to search a prisoner's cell in response to a reported threat of violence, *see Alfrey*, 276 F.3d at 565, or weigh various regulatory objectives in deciding whether to certify a new aircraft design, *see GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1175-77 (9th Cir. 2002).

"to balance the agency's goal of occupational safety against such resource constraints as costs and funding." In addressing government negligence in the implementation of safety precautions, we have several times rejected this precise argument. The reasoning in *ARA Leisure* is representative:

> [T]he fact that Park Service maintenance personnel were required to work within a budget does not make their failure to maintain [a park road] a discretionary function for purposes of the FTCA. . . . To hold otherwise would permit the discretionary function exception to all but swallow the Federal Tort Claims Act. Budgetary constraints underlie virtually all governmental activity.

831 F.2d at 195-96; *see also Bear Medicine*, 241 F.3d at 1216-17; *Kennewick*, 880 F.2d at 1031.

More recently, in *O'Toole v. United States*, we held that the discretionary function exception did not apply to a claim for private property damage resulting from the government's failure to maintain an irrigation ditch on its own property. *See* 295 F.3d at 1037. Elaborating on *ARA Leisure*, we explained:

> The danger that the discretionary function exception will swallow the FTCA is especially great where the government takes on the role of a private landowner. Every slip and fall, every failure to warn, *every inspection and maintenance decision* can be couched in terms of policy choices based on allocation of limited resources. As we have noted before in the discretionary function exception context, "[b]udgetary constraints underlie virtually all governmental activity." Were we to view inadequate funding alone as sufficient to garner the protection of the discretionary function exception, we would read the rule too narrowly and the exception too broadly. Instead, in order to effectuate Congress's intent to compensate

individuals harmed by government negligence, the FTCA, as a remedial statute, should be construed liberally, and its exceptions should be read narrowly.

*Id.* (quoting *ARA Leisure,* 831 F.2d at 196) (additional citations omitted) (emphasis added).

Like the plaintiffs in *O'Toole*, Whisnant is alleging that government negligence in the maintenance of its own property caused his injuries. Following *O'Toole*, then, we decline to permit the government to use the mere presence of budgetary concerns to shield allegedly negligent conduct from suit under the FTCA. "To hold otherwise would permit the discretionary function exception to all but swallow the Federal Tort Claims Act." *ARA Leisure*, 831 F.2d at 196.

The government urges the applicability of *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797 (1984), in which the Supreme Court held that the discretionary function exception barred wrongful death and property damage suits alleging government negligence in certifying an airplane that turned out to be defective. The Court concluded that both the Federal Aviation Administration's choice of a system for reviewing planes for compliance with safety standards and the implementation of that system involved social, economic and political policy judgments. *See id.* at 799-800, 819-20.[4]

*Varig Airlines* is distinguishable from Whisnant's case. The Supreme Court's holding with respect to the FAA's choice of an inspection system is clearly not on point: as we have observed, Whisnant is not alleging that DeCA was negligent in designing its inspection system. The second portion of the Supreme Court's holding in *Varig Airlines* does not control

---

[4]*Varig Airlines* is reflected in the line of Ninth Circuit cases developing what we have identified as the one exception to the design/implementation distinction. *See supra* note 3.

here either. Although the Court held that the implementation as well as the design of the FAA's airplane inspection system was protected under the discretionary function exception, the Court explained that "FAA employees who conducted compliance reviews of the aircraft involved in this case were *specifically empowered to make policy judgments* regarding the degree of confidence that might reasonably be placed in a given manufacturer, the need to maximize compliance with FAA regulations, and the efficient allocation of agency resources." *Id.* at 820 (emphasis added). Complex decisions about confidence in corporations, maximizing compliance with regulations, and allocation of limited resources *among competing safety-promoting tasks* hardly resemble the type of decision Whisnant attributes to DeCA safety personnel — which, at best, reflects exactly the type of budget-driven shirking of safe maintenance to which the *ARA Leisure-O'Toole* line of cases emphatically denies protection under the discretionary function exception, and at worst constitutes simple carelessness.

**[6]** In applying the discretionary function exception, the district court treated Whisnant's claim as one of government negligence in the engagement of Johnson Controls to perform maintenance work at the commissary. But this is not what Whisnant alleged. Rather, according to Whisnant's complaint, the government ignored reports and complaints describing the unsafe condition of the meat department, knew or should have known of the dangerous condition, and intentionally or recklessly or both intentionally and recklessly permitted employees and customers to work and shop at the commissary in spite of the health hazards. The district court brushed these claims aside, explaining Whisnant's "allegations of negligence are irrelevant" to the jurisdictional question. While the district court is correct to the extent that the question of *whether* the government was negligent is irrelevant to the applicability of the discretionary function exception, *see Glacier Bay*, 71 F.3d at 1451, the question of *how* the government is alleged to have been negligent is critical. If Whisnant were

claiming that the government was negligent in electing to employ contractors rather than doing the work itself, or in designing its safety regulations, then his claim would most likely be barred; instead, he is claiming that the government negligently ignored health hazards that were called to its attention, and so his claim is not barred. Because it failed to recognize the import of this distinction, the district court mischaracterized Whisnant's allegations and thereby erred in dismissing his action.[5]

## III.   CONCLUSION

While the government has discretion to decide how to carry out its responsibility to maintain safe and healthy premises, it does not have discretion to abdicate its responsibility in this regard. When it does so, the discretionary function exception cannot shield the government from FTCA liability for its negligent conduct.

In this case, Whisnant has alleged negligence in the implementation, rather than the design, of government safety regulations, and the governmental decisions Whisnant claims were negligent concerned technical and professional judgments about safety rather than broad questions of social, economic, or political policy. Therefore, the discretionary function exception to the FTCA does not bar Whisnant's suit.

---

[5]The confusion apparently caused by the use of an independent contractor in this case seems to have led the district court to include an extraneous reference in its holding. The court's dismissal of Whisnant's suit concludes: "This cause of action is barred by the discretionary function *and contractor* exceptions to the waiver of sovereign immunity under the FTCA . . . ." (emphasis added). However, a review of the district court's decision in this case indicates that the independent contractor exception to the FTCA is not a ground upon which the district court actually relied: the district court's ruling is devoid of analysis of this exception. On appeal, neither party discussed the issue at all. We must conclude that the district court's reference to this additional basis for dismissal was inadvertent and does not reflect the basis for the court's decision.

We reverse the district court's dismissal of the action and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**