B. FLETCHER, Circuit Judge,
dissenting:
I respectfully dissent.
The majority holds that the Corps’ decision to delay replacing the Daguerre Point Dam warning signs is protected by the discretionary function exception because that decision required the Corps to balance employee safety and public safety. I strongly disagree. The exception “protects only governmental actions and decisions based on considerations of public policy.” Berkovitz v. United States, 486 U.S. 531, 537, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). Safety considerations — competing or otherwise — are not policy considerations.
According to the majority, not only does the discretionary function exception cover decisions that require the government to balance competing safety considerations, but it covers decisions that involve any competing considerations. See Maj. Op. at 863 (“[S]o long as a decision involves even two competing interests, it is ‘susceptible’ to policy analysis and is thus protected by the discretionary function exception.”); Maj. Op. at 863 (“Where the government is forced, as it was here, to balance competing concerns, immunity shields the deci *864 sion.” (internal quotation marks omitted)). Such a holding is both gratuitous and absurd. All decisions require balancing. There are always trade-offs. Every action has both costs and benefits. See generally Milton Friedman, There’s No Such Thing as a Free Lunch (1975). If the discretionary function exception is triggered any time the government has to balance “even two competing interests,” Maj. Op at 863, then the exception covers every decision ever made by the federal government. I cannot endorse such a result.
I would hold that the district court erred in dismissing this suit and I would remand for further proceedings.
I. Daguerre Point Dam Sign Plan
The Corps’ sign plan for the Daguerre Point Dam is very specific. The plan requires the Corps to post several permanent warning signs on the Yuba River, including a sign four miles upstream from the dam that says “Warning-Submerged Dam 4 Miles Downstream,” a number of signs that read “Raft Portage,” and signs on the dam abutments that say “Danger-Keep Back.”
A portion of the river upstream from the dam is popular with pleasure boaters in the spring and summer months.[1] The Daguerre Point Dam sign plan requires the Corps to post seasonal signs that clearly instruct boaters to portage when they approach the submerged dam. Two seasonal signs are placed on a gravel bar in the middle of the river and read, respectively, “Warning — Submerged Dam 1500 Downstream” and “Danger — Submerged Dam Ahead Take Out Now.” On the south bank of the river, seasonal signs direct boaters to points on the bank where they should ground their boats and begin to portage. These signs read Raft Portage” and “Danger' — Submerged Dam Ahead — Take Out This Side.” The sign plan also calls for the Corps to anchor a buoy in the middle of the river that directs boaters Take Out.” In no uncertain terms, these signs make clear that boaters must begin to portage well before they near the dam.
None of these signs, according to the Complaint, were in place when Mrs. Bailey’s husband and children began to raft down the Yuba River. The only warning signs posted were the “Danger-Keep Back” signs on the dam itself, and they came too late. As a result, Mr. Bailey and his sons had no knowledge of the dam and were never instructed to take their raft out of the water. Mrs. Bailey argues that, had the Corps timely replaced the warning signs that had been washed away in May 2005, her husband would have known that the submerged Daguerre Point Dam lay ahead, taken his boat out of the water as instructed, and survived.
II. Warning Signs on the Banks of the Yuba River
The discretionary function exception covers decisions by the federal government that are “grounded in social, economic, and political policy.” United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). The majority concludes that the Corps decision to delay replacing the warning signs is protected by the exception because that decision required the Corps to balance the safety of the public against the safety of its employees.
*865 If we assume that balancing competing safety considerations requires policy judgment — and I argue below that it does not — then it follows that the discretionary function exception covers only the Corps’ decision to delay replacing the two seasonal signs on the gravel bar in the middle of the river, the buoy anchored to the bottom of the river and the signs on the south bank. To place those signs, Corps employees must drive or wade out into the river, a task that was made dangerous in May 2005 by unusually high water flows on the Yuba River.
Douglas Grothe, an employee of the Army Corps of Engineers, indicated in his declaration supporting the Corps’ motion for summary judgment that if called as a witness he would testify that he is an employee of the Corps and that among his duties he managed all the recreation areas, including operating and managing the Daguerre Point Dam; that his “[s]taff attempted to assess the situation[of the washed-out signs] on May 25 but could not get to the location where the signs had been placed either on the gravel/sand bar or on the south banks of the river because of the high, fast water and dangerous conditions. On May 30, 2005 staff confirmed by visual inspection that the signs were missing and we decided that it was safe for our employees to begin replacing the missing signs. The work to replace those signs began the same day.” The fatal accident occurred the previous day, May 29, 2005.
Nowhere does the Corps assert that turbulent water made it difficult for employees to post warning signs on the north bank of the river upstream from the dam — for example, the “permanent” signs, such as signs on the dam abutments that say “Danger-Keep Back,” signs that say “Raft Portage,” and a sign four miles upstream that says “Warning-Submerged Dam 4 Miles Downstream.” According to the majority’s own analysis, the Corps’ decision to delay replacing some of the signs required by the Daguerre Point Dam sign plan involved no choice between competing safety concerns and thus were not covered by the discretionary function exception. This alone requires reversal and a remand.
III. The Corps Decision Implicated Only Safety Considerations, Not Policy Considerations
“The decision to adopt safety precautions may be based in policy considerations, but the implementation of those precautions is not.” Whisnant v. United States, 400 F.3d 1177, 1182 (9th Cir.2005) (internal quotation marks omitted); see also Terbush v. United States, 516 F.3d 1125, 1133 (9th Cir.2008) (“[Matters of routine maintenance are not protected by the discretionary function exception.... ”). For example, in Indian Towing Co. v. United States, 350 U.S. 61, 69-70, 76 S.Ct. 122, 100 L.Ed. 48 (1955), the Supreme Court held that the Coast Guard could be sued under the FTCA for failing to maintain a light house, and in Whisnant, 400 F.3d at 1181-85, the Ninth Circuit held that the United States could be sued for failing to eradicate mold at a naval commissary. See also Bolt v. United States, 509 F.3d 1028, 1034-35 (9th Cir.2007) (holding that snow removal in parking lot involved routine maintenance and was, therefore, not protected by the discretionary function exception); Soldano v. United States, 453 F.3d 1140, 1150-51 (9th Cir.2006); O’Toole v. United States, 295 F.3d 1029, 1035-37 (9th Cir.2002) (holding that Bureau of Indian Affairs could be held liable for neglecting to maintain an irrigation system).
The Corps’ initial decision to adopt the Daguerre Point Dam sign plan may have taken into account policy considerations— *866 for example, ensuring public access and protecting the environment. See Terbush, 516 F.3d at 1135-37; Childers v. United States, 40 F.3d 973, 975-76 (9th Cir.1994); but see Oberson v. U.S. Dep’t of Agric., 514 F.3d 989, 998 (9th Cir.2008); Faber v. United States, 56 F.3d 1122, 1127-28 (9th Cir.1995). However, the Corps’ subsequent decision to delay replacing the missing signs did not implicate such concerns. The policy decision was made when the Corps adopted the Daguerre Point Dam sign plan. All that was left was for the Corps to exercise its “professional judgment” in solving the logistical problem of how to overcome the turbulent water, or alternatively in deciding how long to wait for the water to subside. Whisnant, 400 F.3d at 1185. Because Mrs. Bailey is not arguing that the Corps should have adopted a better sign plan, but instead is challenging the Corps’ failure to properly implement the existing plan, we should allow her suit to proceed.
It is true that the discretionary function exception applies to the implementation of a pre-existing safety plan when “the implementation itself implicates policy concerns.” Id. at 1182 n. 3. The majority believes that such is the case here because the Corps had to balance the safety of the public against the safety of its own employees. The Corps certainly had to make a judgment call, but not one that involved policy concerns. The case law is clear that safety considerations are not policy considerations. See, e.g., Navarette v. United States, 500 F.3d 914, 919 (9th Cir.2007) (holding that United States not immune because decision to warn involved “safety considerations under an established policy, rather than the balancing of competing policy considerations” (internal quotation marks omitted)); Whisnant, 400 F.3d at 1181 (“Matters of scientific and professional judgment — particularly judgments concerning safety — are rarely considered to be susceptible to social, economic, or political policy.”); Miller v. United States, 163 F.3d 591, 596 (9th Cir.1998) (“[Sjafety is not a consideration based on policy.”); Faber, 56 F.3d at 1125 (“[A] failure to warn involves considerations of safety, not public policy.”).[2] Because the Corps considered only safety factors when it decided to delay replacing the missing warning signs, that decision is not protected by the discretionary function exception.
IV. Balancing Competing Safety Considerations Does Not Require Policy Judgment
The majority acknowledges that safety considerations are not policy considerations, but concludes that “balancing competing safety considerations is a protected policy judgment.” Maj. Op. at 862. This conclusion is based on a footnote in Whisnant where the court pointed to Miller v. United States, 163 F.3d 591, 595-96 (9th Cir.1998), as an example of a case where the implementation of a safety precaution implicated policy considerations. Whisnant, 400 F.3d at 1182 n. 3. The court observed that Miller was a case where the government had to “consider competing firefighter safety and public safety considerations in deciding how to fight a forest fire.” Id. Because the Corps also had to balance employee and public safety, the *867 majority concludes that Whisnant requires dismissal. This short statement from Whisnant is too thin a reed for the majority to rest its entire decision upon it. The line is dicta, as Whisnant was not a case where employee safety was a concern or where the decision to implement a safety precaution implicated policy considerations. More importantly, when the footnote is read in context, it is clear that the court was giving a shorthand description of Miller when it summarized the case as one involving competing safety considerations, not creating a new rule of law providing that balancing competing safety considerations requires policy judgment.
The majority’s interpretation of the Whisnant footnote cannot be correct because it is contrary to the central holdings of Whisnant and Miller. Both cases compel the conclusion that the Corps’ decision in this case is not covered by the discretionary function exception. The Whisnant court explained that “matters of scientific and professional judgment — particularly judgments concerning safety — are rarely considered to be susceptible to social, economic, or political policy.” Id. at 1181. Because “the governmental decisions Whisnant claim[ed] were negligent concerned technical and professional judgments about safety,” the court concluded that the discretionary function exception did not apply. Id. at 1185. By the same token, because Mrs. Bailey is challenging a decision by the Corps that concerned only technical and professional judgments about safety, that decision is also not covered by the discretionary function exception.
The decision in Miller is even more clear that balancing competing safety considerations does not require policy judgment. The Millers sued the Forest Service for damages to their property from a forest fire. The court began by observing that the Forest Manual requires the Forest Service to take into account “cost, public safety, firefighter safety, and resource damage” when fighting fires. 163 F.3d at 595. After acknowledging “that safety is not a consideration based on policy,” the court went on to observe that, “[wjhile safety was one consideration, the decision regarding how to best approach the Bald Butte fire also required consideration of fire suppression costs, minimizing resource damage and environmental impacts, and protecting private property.” Id. at 596. Based on those non-safety considerations, the court concluded that the discretionary function exception applied. Id. 597. The court in Miller clearly held that the Forest Service’s decision was protected by the discretionary function exception because that decision involved considerations other than public and firefighter safety.[3]
*868 Instead of considering the central holdings and reasoning of Whisnant and Miller, the majority focuses exclusively on a brief footnote in Whisnant that describes Miller as a case where the Forest Service had to balance employee and public safety. The footnote’s description of Miller is not wrong — the Forest Service did indeed have to strike that balance — but the majority’s interpretation of it is wrong.
It is important to understand Miller in context. Its decision to let the Bald Butte fire to burn and to destroy the Millers’ property involved far more than safety concerns. Several forest fires caused by lightning took place almost simultaneously. Resources were stretched thin. Whose property should be saved was difficult and heart-wrenching. The Miller court faced with these facts stated: “While safety was one consideration, the decision regarding how to best approach the Bald Butte fire also required consideration of fire suppression costs, minimizing resource damage and environmental impacts, and protecting private property. The discretionary function exception is designed to prevent the judiciary from using its power to police the decisions of the executive branch. Our task is not to determine whether the Forest Service made the correct decision in its allocation of resources. Where the government is forced, as it was here, to balance competing concerns, immunity shields the decision.” Id. at 596.
Unlike the Forest Service’s decision in Miller, the Corps’ decision to delay replacing the Daguerre Point Dam warning signs did not implicate considerations other than safety. Mrs. Bailey’s suit must be allowed to proceed.
V. The Majority’s Decision is Inconsistent with the Overarching Purpose of the FTCA
The majority’s conclusion also is inconsistent with the “broad and just purpose” of the Federal Tort Claims Act, which is “to compensate the victims of negligence in the conduct of governmental activities in circumstances like unto those in which a private person would be liable and not to leave just treatment to the caprice and legislative burden of individual private laws.” Indian Towing Co., 350 U.S. at 68-69, 76 S.Ct. 122; see also 28 U.S.C. § 1346(b)(1). “It would be wrong to apply the discretionary function exception in a case where ... [the government’s] judgment would be no different than a judgment made by a private individual not to take certain measures to ensure the safety of visitors.” Faber, 56 F.3d at 1125. A private landowner in the Corps’ position would have had to consider the exact same factors the Corps did when deciding to delay replacing the warning signs. This is exactly the kind of scenario that Congress intended to be covered by the FTCA. See Dalehite v. United States, 346 U.S. 15, 28, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) (“Uppermost in the collective mind of Congress were the ordinary common-law torts.”), partially overruled on other grounds by Rayonier Inc. v. United States, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957).[4]
The discretionary function exception marks the boundary between those situations where the government is acting in its legislative or regulatory capacity and those where it is acting as any private person might. See Varig Airlines, 467 U.S. at 813-14, 104 S.Ct. 2755; Dalehite, 346 U.S. at 27-28, 73 S.Ct. 956. By preserving sovereign immunity for the former eatego *869 ry of government actions, the exception “prevent[s] judicial ‘second-guessing’ of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.” Varig Airlines, 467 U.S. at 814, 104 S.Ct. 2755. If this suit were to proceed, the district court would not usurp the Corps as supervisor and regulator of the Daguerre Point Dam. The Corps would still have responsibility for deciding how to run the dam, what hazards warrant safety precautions, and what those safety precautions should entail. But having made that decision, it would then be left for the court to determine whether the Corps was obeying applicable laws, its own rules and safety plans, and the common law. Dalehite, 346 U.S. at 34, 73 S.Ct. 956 (“The ‘discretion’ protected by the section is not that of the judge — a power to decide within the limits of positive rules of law subject to judicial review.”). This sort of second-guessing is not the kind prohibited by the discretionary function exception, it is the kind that a court must undertake in any garden variety tort case. The discretionary function exception does not apply to Mrs. Bailey’s suit.
VI. Balancing, By Itself, Does Not Always Require Policy Judgment
The majority does not focus on the nature of the considerations that the Corps took into account when deciding when to replace the missing warning signs, but rather on the fact that the Corps had to balance competing considerations. All balancing requires policy judgment, according to the majority. See Maj. Op. at 863 (“[S]o long as a decision involves even two competing interests, it is ‘susceptible’ to policy analysis and is thus protected by the discretionary function exception.”); Maj. Op. at 863 (“Where the government is forced, as it was here, to balance competing concerns, immunity shields the decision.”).
All decisions require balancing. Every action has both costs and benefits. There are always trade-offs. When the government acts to achieve some benefit, that action comes with a cost; the government consumes resources and creates risks by acting, and it forgoes opportunities to use those resources in some other fashion to obtain a different benefit. See O’Toole, 295 F.3d at 1037 (“Every slip and fall, every failure to warn, every inspection and maintenance decision can be couched in terms of policy choices based on allocation of limited resources”). If the discretionary function exception applied to every decision that required the government to balance “even two competing interests,” Maj. Op. at 863, then the discretionary function exception swallows the FTCA whole.
The Army had to weigh the safety of those living in military housing against the need to conserve its limited resources when it decided whether to remove snow from resident parking lots at Fort Wainwright. See Bolt, 509 F.3d at 1034. The United States Bureau of Reclamation had to balance safety against efficiency when it decided whether to excavate unsuitable materials from underneath the embankments of the Kennewick canal. See Kennewick Irrigation Dist. v. United States, 880 F.2d 1018, 1030-32 (9th Cir.1989). When deciding whether to eradicate toxic mold at a commissary, the Navy had to weigh the time and money it would take against the health benefits for its employees. See Whisnant, 400 F.3d at 1184. The National Park Service had to balance added convenience to park visitors against risks to their safety when it decided to increase the speed limit on a park road. See Soldano, 453 F.3d at 1151 (9th Cir.2006). Despite the competing considerations that underlay each of these deci *870 sions, the discretionary function exception was held not to apply.
It is not enough that the Corps had to balance competing considerations when deciding when to replace the missing Daguerre Point Dam signs. We must look at the substance of those considerations, and decide whether those considerations were related to “social, economic, or political policy.” Varig, 467 U.S. at 814, 104 S.Ct. 2755. The Corps decision was motivated by safety concerns, and safety considerations are not policy considerations. I would hold that the district court erred in dismissing this suit and remand for the suit to proceed.

. Submerged dams like the Daguerre Point Dam are particularly hazardous for pleasure boaters. Such dams are difficult to see from low riding boats and create strong reverse currents downstream that can pull small boats into the face of the dam.

. See also Oberson, 514 F.3d at 998; Bolt, 509 F.3d at 1034; Soldano, 453 F.3d at 1150-51; Sutton v. Earles, 26 F.3d 903, 910-11 (9th Cir.1994); Ariz. Maint. Co. v. United States, 864 F.2d 1497, 1504 (9th Cir.1989); Seyler v. United States, 832 F.2d 120, 123 (9th Cir.1987); ARA Leisure Services v. United States, 831 F.2d 193, 195 (9th Cir.1987); cf. Miller v. United States, 163 F.3d 591, 596 (9th Cir.1998) (holding that United States immune because it had to consider more than safety when making the challenged decision); Lesoeur v. United States, 21 F.3d 965, 970 (9th Cir.1994) (same).

. The majority ignores the central holding of Miller and focuses instead on Miller’s statement that "the Forest Service’s decision regarding how to attack a fire involved a balancing of considerations, including cost, public safety, firefighter safety, and resource damage,” considerations that “reflect the type of economic, social and political concerns that the discretionary function exception is designed to protect.” Id. at 595. Based on this sentence, the majority interprets Miller as holding that the listed factors, although they may be non-policy considerations when taken alone, transform into policy considerations when they are balanced against one another. See Maj. Op. at 862.
If the majority’s reading is correct, then Miller holds that the discretionary function exception applies when the government balances safety against cost, two of the factors listed. But it is black letter law that the discretionary function exception does not cover decisions that require the government to weigh increased safety against the cost of additional precautions. See Terbush, 516 F.3d at 1134 & n. 4; Whisnant, 400 F.3d at 1184; O’Toole, 295 F.3d at 1037 ("Every slip and fall, every failure to warn, every inspection and maintenance decision can be couched in terms of policy choices based on allocation of limited resources.”).

. See Varig Airlines, 467 U.S. at 813 n. 10, 104 S.Ct. 2755 (noting that “fundamental aspects of Dalehite, including its construction of [the discretionary function exception], remain undisturbed” after Rayonier).