**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| WOODWARD STUCKART, LLC; CRAIG WOODWARD; LUCY WOODWARD; MICHAEL STUCKART; COLE BROTHERS, INC. Plaintiffs - Appellants, v. UNITED STATES OF AMERICA Defendant - Appellee. | No. 13-36132 D.C. Nos. 2:11-cv-00322-SU; 2:11-cv-00323-SU MEMORANDUM* |

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted March 11, 2016
Portland, Oregon

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: BERZON and WATFORD, Circuit Judges, and WALTER,[**] Senior District Judge.

Plaintiffs-Appellants Woodward Stuckart, LLC, Craig Woodward, Lucy Woodward, Michael Stuckart, and Cole Brothers, Inc. (collectively, "Appellants") are a group of private timberland owners whose property was damaged by the Bridge Creek Fire, which escaped from the Ochoco National Forest. The United States Forest Service ("FS") decided to "use" the Bridge Creek Fire for "resource management," a practice the FS refers to as "Wildland Fire Use" ("WFU"). On August 16, 2008, the fire rapidly expanded and spread onto Appellants' land, at which time suppression efforts commenced. Appellants later sued the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* ("FTCA"), but the district court determined that Appellants' suit was barred by the "discretionary function exception" to the FTCA's general waiver of sovereign immunity. 28 U.S.C. § 2680(a). We affirm.

The discretionary function exception provides that the United States remains immune from suit under the FTCA when the plaintiff's claim is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the

[**] The Honorable Donald E. Walter, Senior District Judge for the United States District Court for the Western District of Louisiana, sitting by designation.

2

Government, whether or not the discretion involved be abused." *Id.* The Supreme Court has set out a two-part test to determine whether the discretionary function exception is applicable. *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

1. As to the first prong of the *Berkovitz* test, we agree with the district court's determination that the FS retained discretion as to whether and when to begin suppression. Even assuming that the FS's actions violated the WFU guidelines that Appellants identify, nothing in the guidelines required the FS to cease WFU and begin suppression immediately if such violations occurred.

"If there is . . . a statute or policy directing mandatory and specific action, the inquiry comes to an end because there can be no element of discretion when an employee 'has no rightful option but to adhere to the directive.'" *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008) (quoting *Berkovitz*, 486 U.S. at 536). However, "an agency retains discretion whether to act where no statute or agency policy dictates the precise manner in which the agency is to complete the challenged task." *Bailey v. United States*, 623 F.3d 855, 860 (9th Cir. 2010).

Here, the guidelines that Appellants point to as "mandating" suppression do not direct the FS to take any specific action regarding suppression if the guidelines are not followed. Appellants principally rely on the guidelines' characterization of the response to a wildland fire as an "either/or" dichotomy—that is, a fire may

3

either be suppressed or managed as a WFU, but never both simultaneously, and when suppression efforts begin for a fire that was initially managed as a WFU, that fire can never again be returned to WFU status. But that "either/or" dichotomy does not mandate that if there is any deviation from the WFU guidelines then suppression must immediately begin.

Appellants also point to the guidelines' discussion of the factors to be weighed when the Agency Administrator completes the "decision criteria checklist," but that argument is unavailing. The guidelines direct the Agency Administrator to *consider* whether "current fire activity precludes the ability to manage the fire with adequate resources and skill mixes"; the Agency Administrator is not instructed that he must answer this question affirmatively in any given situation. The first prong of the *Berkovitz* test is therefore met.

2. The harder question in this case is the second *Berkovitz* prong, which involves consideration of whether the decisions made during the course of the FS's WFU management were "of the kind that the discretionary function exception was designed to shield," *i.e.* decisions involving public policy. *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991). "Public policy has been understood to include decisions 'grounded in social, economic, or political policy.'" *Terbush*, 516 F.3d at 1129 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814

4

(1984)).  The Ninth Circuit has generally held that "the design of a course of governmental action is shielded by the discretionary function exception, whereas the implementation of that course of action is not."  *Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005) (emphases omitted).  Relatedly, "matters of scientific and professional judgment—particularly judgments concerning safety—are rarely considered to be susceptible to social, economic, or political policy."  *Id.*

The WFU practice, in the general sense, is obviously grounded on considerations of public policy.  But the on-the-ground decisions made during WFU management are akin to matters of scientific and professional judgment, rather than decisions involving "social, economic, and political policy."  In this case, Appellants do not challenge the overall propriety of the WFU strategy, only that the strategy was misapplied in this specific instance.  Such an argument does not necessarily implicate the type of policy judgments that the discretionary function exception was designed to protect.  *See Green v. United States*, 630 F.3d 1245, 1251–52 (9th Cir. 2011) (holding that the FS's decision to light a "backfire" in response to a naturally caused wildfire was discretionary, but the failure to notify neighboring landowners of the backfire was not a policy based choice).

Nevertheless, our precedent treats the FS's response to multiple wildland fires as being grounded on competing public policy considerations. We may not depart from that precedent. *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003). Specifically, we have previously held that the FS's allocation of fire suppression resources to multiple fires was shielded by the discretionary function exception because that allocation involved a balancing of competing policy interests. *Miller v. United States*, 163 F.3d 591, 596 (9th Cir. 1998). This court later explained that *Miller*'s holding constituted an exception to the "design/implementation distinction." *Whisnant*, 400 F. 3d at 1182 n. 3. Specifically, we explained that, although the implementation of a government policy is not usually considered a policy choice, "[t]he implementation of a government policy *is* shielded where the implementation itself implicates policy concerns, such as where government officials must consider competing fire-fighter safety and public safety considerations in deciding how to fight a forest fire . . . ." *Id.* (citing *Miller*, 163 F.3d at 595–96). The district court correctly applied this precedent in finding that the FS's decisions in this case were grounded in public policy.

Appellants argue that *Miller* and other cases applying it involved fire *suppression* as opposed to fire *use*, and therefore the rationale of *Miller* is

inappropriate here. We disagree. Similar to the situation in *Miller*, the Bridge Creek Fire was one of multiple fires burning on the Ochoco in August 2008. The FS's guidelines directed the FS to consider whether those fires should be immediately suppressed, or whether the fires should be allowed to burn as WFUs to reduce the potential for even worse fires in the future. Under the FS guidelines, a WFU response to a naturally-caused fire is considered "an emergency action" and "[i]t receives consideration, management attention, and management policies equal to wildfire suppression . . . ." Accordingly, just as in *Miller*, the FS's response to the Bridge Creek Fire implicated competing public policy considerations, and was thus protected by the discretionary function exception.

The district court properly applied the discretionary function test as currently understood in the Ninth Circuit.

**Affirmed.**